Sidney **BRODY**, and others named in the schedule annnexed to the complaint, Plaintiffs,

v.

Thomas F. **McCOY**, as State Administrator and Secretary to the Administrative Board of the Judicial Conference of the State of New York, Defendant.

No. 66 Civ. 1814.

United States District Court
S. D. New York.

Aug. 1, 1966.

---

Levien & Goffen, New York City, for plaintiffs.

Lawrence N. Marcus, New York City, for defendant.

FRANKEL, District Judge.

By constitutional amendments and implementing statutes effective September 1, 1962, the State of New York undertook to establish a more nearly unified court system. The resulting dislocations and reclassifications of court personnel have led to a number of lawsuits by employees claiming to have been unlawfully disadvantaged. This is one of those controversies.

The plaintiffs are twelve court clerks who have served for varying numbers of years in the State Supreme Court, County of Kings. The defendant Thomas F. McCoy, State Administrator and Secretary to the Administrative Board of the Judicial Conference of the State of New York, has been responsible *inter alia* for problems of job classification and reclassification attendant upon the revisions of the court system.[1]

For some three years after inauguration of the unified court system, the staff of the Administrative Board conducted a classification survey of the state courts' non-judicial employees. Acting under a mandate to "make effective standards and policies for general application throughout the state," including "standards and policies relating to * * * [p]ersonnel practices, title structure, job definition, classification,

[and] qualifications" (N.Y. Judiciary Law, McKinney's Consol.Laws, c. 30, § 212), it found, and determined to correct, a difference between the existing classification systems for court clerks in New York (Manhattan) and Kings (Brooklyn) Counties. In Manhattan, there were two levels, Deputy Clerks and Assistant Deputy Clerks, with separate competitive examinations for each. In Brooklyn, where plaintiffs were and are employed, there was a single category, "Clerk, Grade B," and a single examination. The Board concluded that the two-level system should be extended to Brooklyn, and that both places should have categories to be known in ascending order as "Court Clerk I" and "Court Clerk II."

According to defendant's affidavit, one method of accomplishing the change would have been to place all of the Brooklyn clerks in Grade I, and to give a promotional examination for Grade II, because it appeared that the pre-existing "one competitive examination taken in Brooklyn was equivalent to the lower position level competitive examination in Manhattan." Supplemental Affidavit of Thomas F. McCoy, p. 3. It was decided, however,

> "that the most equitable method of applying the new two levels of titles would be by a formula which reflected the work done by the incumbents in the past. Therefore, the conversion formula which was adopted provided that any person who had performed 12 months of Court Clerk II work in the past would be classified as a Court Clerk II. The 12 months need not have been consecutively served, but could consist of interrupted periods. It was felt that this would be the fairest method." Id., pp. 3–4.

Acting on this judgment, the Board proceeded to make an "individual evaluation" of each affected Brooklyn clerk. Id., p. 4. As a result, out of approxi-

1. The Administrative Board is comprised of the Chief Judge of the Court of Appeals and the Presiding Justices of the four Appellate Divisions. N.Y. Judiciary Law § 210. The Administrator, who also serves as Secretary, is a Board appointee. Id. § 211.

mately 140 such clerks, it was determined that 15 (including the 12 plaintiffs herein) should be assigned to Grade I and the remainder to the higher Grade II.[2] It does not appear that any of those placed in Grade I will suffer a reduction in pay; indeed, it remains to be determined what the pay levels for the two grades will be. At the same time, it is conceded by defendant that there will sooner or later be higher pay, as well as higher status and responsibilities, for those in Grade II.

The plaintiffs in this action have now been given formal notice that they will be classified in Grade I, effective on or shortly after August 1, 1966.[3] Far from agreeing that the conversion plan resulting in their new classification was the "fairest method," plaintiffs attack it as wholly arbitrary and contrary to the Federal Constitution on grounds to be considered below. Among the materials they marshal in support of their position is a seven-page letter of March 11, 1966, sent to defendant by Justice Walter R. Hart, Chairman of the Personnel Committee of the Kings County Supreme Court. Speaking for himself and the other Justices of his Court, Justice Hart pointed out that the entire staff of clerks, evidently including plaintiffs, had been assigned interchangeably over the years to duties both "in and out of courtrooms."[4] He noted that all had passed the same examination pursuant to the same civil service announcement and invitation, and that the test had "purportedly qualified them to

perform any and all clerical duties" in the court. The new classification, he urged, should not turn upon the "accident of assignment" during their service in the single grade they formerly held. A determination on this basis, he protested, "is not only unjust but illogical." Moreover, he continued, the Administrative Board's distinction between service in a trial term and in other parts of the court was unsound; and he outlined in some detail the complexity and importance of clerks' duties in various nontrial parts. He acknowledged "that there may be a difference of opinion as to the relative importance of the work being performed by persons in different categories," but urged vigorously, for all of the justices, that all of the clerks should in fairness be given Grade II. In conclusion he said:

"It will be extremely difficult to explain satisfactorily to the ten or fifteen men who might be by a strict interpretation classified as Clerk 1 why they have not been classified as Clerk 2, but it would be far more difficult for the justices of this court to live with them under these circumstances, knowing that they have been treated unfairly and that their morale is shattered."

Resting essentially upon the arguments eloquently made for them in the foregoing letter of Mr. Justice Hart, plaintiffs seek in this action to enjoin the Administrative Board's plan of conversion and reclassification. They invoke the jurisdiction of this court under

2. These approximate totals are taken from the complaint.

3. When the suit was instituted, on June 23, 1966, it was understood, but not yet formally announced, that this action would be taken in the cases of these plaintiffs. This small element of uncertainty, suggesting a threshold question whether the actions might be premature, has now been eliminated. Plaintiffs have received official notices, dated July 1 although they were actually given almost two weeks after that date. Defendant has agreed, at the court's suggestion, to stay the effective date of the notices for 30 days. It is assumed that

the 30-day period runs from actual service of the notices.

4. While the facts are scarcely developed in rich detail by the papers before us, it appears that a central difference between the two new grades relates to experience in the trial courtroom, the higher grade being available for those who have acquired 12 months or more of such experience during their tenure as clerks. In addition, clerks who have served as law assistants to justices, or who have performed other duties now viewed as being on a commensurately high level, are deemed eligible for Grade II.

28 U.S.C. § 1331 and 42 U.S.C. § 1981 et seq., and assert that:

(1) Their reclassification will effect the kind of impairment of the obligation of contract forbidden by Article I, Section 10, of the Constitution.

(2) They are being denied the due process and equal protection of the laws guaranteed them by the Fourteenth Amendment.

At this point plaintiffs have presented two motions: first, with the filing of their complaint, they moved for a preliminary injunction. Thereafter, they applied for the convening of a three-judge court. We deal with the two applications in the order of their presentation.

## I.

■ It seems perfectly clear that the application for a preliminary injunction must be denied. In the first place, far from showing a high probability of success, [H. E. Fletcher Co. v. Rock of Ages Corporation, 326 F.2d 13, 17 (2d Cir. 1963); Joshua Meier Company v. Albany Novelty Mfg. Co., 236 F.2d 144, 148 (2d Cir. 1956)], the papers now before the court tend strongly to indicate that plaintiffs will be defeated in the end. Furthermore, assuming their claims are

substantial, plaintiffs have belatedly recognized that the case calls for a three-judge court, and they do not show the kind of irreparable damage that could justify a single judge's order blocking the personnel actions of which they complain. See 28 U.S.C. § 2284(3).

■ To treat briefly of the merits, plaintiffs claim first under Article I, Section 10, that the reclassification impairs contract obligations owed them by the State. In part, the argument is predicated on the assertion that the new grade status is being imposed upon them in violation of the State Constitution, Article VI, Section 35(l),[5] and the State's Judiciary Law, Section 223(1).[6] It seems unnecessary to consider whether plaintiffs may be correct in their view that state constitutional and statutory law has been transgressed. For it is difficult to perceive how these asserted violations, as such, could impair contract obligations. If plaintiffs were correct, there would be a wide door to the federal courts, through the "contract" clause of all things, for the litigation of obviously and peculiarly state questions. The argument appears to be devoid of substance. Cf. Dodge v. Board of Education, 302 U.S. 74, 78–79, 58 S.Ct. 98, 82 L. Ed. 57 (1937); Coombes v. Getz, 285

---

**5.** "As may be provided by law, the non-judicial personnel of the courts affected by this article in office on the effective date of this article shall, to the extent practicable, be continued without diminution of salaries and with the same status and rights in the courts established or continued by this article; and especially skilled, experienced and trained personnel shall, to the extent practicable, be assigned to like functions in the courts which exercise the jurisdiction formerly exercised by the courts in which they were employed. In the event that the adoption of this article shall require or make possible a reduction in the number of non-judicial personnel, or in the number of certain categories of such personnel, such reduction shall be made, to the extent practicable, by provision that the death, resignation, removal or retirement of an employee shall not create a vacancy until the reduced number of personnel has been reached."

**6.** "Officers and employees of the courts abolished by article six of the constitution, as amended, on the effective date hereof, shall, to the extent practicable, be transferred to courts which exercise the jurisdiction formerly exercised by the courts in which they were employed, and appointed to positions in such courts where their skills, experience and training can be fully utilized. Transfers and appointments under this section shall comply with the provisions of the civil service law. The officer or employee so transferred or appointed shall be continued in his new position without diminution in salary and with the same status and rights. Officers and employees of the other courts affected by article six of the constitution, as amended, on the effective date hereof, shall be continued in their office or employment in such courts without diminution of salaries and with the same status and rights."

U.S. 434, 449–450, 52 S.Ct. 435, 76 L.Ed. 866 (1932) (Cardozo, Brandeis, Stone, JJ., dissenting).

■ More plausibly, plaintiffs say a "contract" arose between them and the State because the Civil Service notice pursuant to which they appeared and were examined to become "Clerks, Grade B" stated that the positions carried duties "as clerk in the courtroom at trial and special terms." Having taken and passed the examination, plaintiffs say, they now have a contract that forbids their being assigned less than the full range of duties described in the original notice. We have suggested that the argument may be "plausible." It is not more than that. Plaintiffs cite no state or federal authority, and we know of none, that warrants the finding of a "contract" like the one they assert. There is substantial reason to hesitate before conjuring up "contracts" without "an adequate expression of an actual intent on the part of the State to set change of position against promise * * *" since this places "a great attribute of sovereignty beyond the right of change." Wisconsin & Michigan Ry. Co. v. Powers, 191 U.S. 379, 386–387, 24 S.Ct. 107, 48 L.Ed. 229 (1903) (Holmes, J.). On its face the notice of examination, apparently relied on by plaintiffs as an "offer" under the standard contract rubric, seems no more than "words of prophecy, encouragement or bounty, holding out hope but not amounting to a covenant." Id. at 386, 24 S.Ct. at 108. Without deciding now that plaintiffs must surely fail, their prospects on this point scarcely reach the level of promise warranting a preliminary injunction. Cf. Dodge v. Board of Education, supra; Higginbotham v. Baton Rouge, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968 (1939).

■ The claimed denials of due process and equal protection do not seem more weighty. The facts outlined earlier are enough, in our view, to give powerful reason for a tentative judgment that the conversion formula is well within the bounds of rationality. It may be sub-ject—we assume it is—to the severe strictures, on grounds of both logic and fairness, leveled against it by Mr. Justice Hart. But even he acknowledged that there was room for "a difference of opinion" and that a "strict interpretation" could justify the assignment to Grade I of 10 or 15 of the affected clerks. Apart from that, it is to be remembered that the Fourteenth Amendment weapon plaintiffs brandish reaches "no further than the invidious discrimination." Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); see also Seagram & Sons v. Hostetter, 384 U.S. 35, 50, 86 S.Ct. 1254 (1966). The criterion employed by the Administrative Board in this case, referring to prior work experience as a basis for employment classification, has at least the sound of a familiar and sensible approach. In any event, at this preliminary stage, plaintiffs make no convincing demonstration that it lacks "some reasonable basis;" and they are clearly not entitled to a restraint merely because it may be that the classification "is not made with mathematical nicety or because in practice it results in some inequality." Morey v. Doud, 354 U.S. 457, 463, 77 S.Ct. 1344, 1349, 1 L.Ed.2d 1485 (1957).

■ Finally, as noted above, plaintiffs show no irreparable damage warranting a restraint at this stage. 28 U.S.C. § 2284(3). Their pay is not yet affected; there is no showing as to how many months will pass before there is such an impact. Their aggrievement over lost "status" is not unreal, but is adequately cured if, as now seems unlikely, they are vindicated in the end.

## II.

■ As to the convening of a three-judge court, this might be a matter of grave doubt if this were a case of first impression. For reasons already sketched, the federal constitutional claims appear to approach the level of insubstantiality requiring a single judge to dismiss rather than set in motion the three-judge machinery. See Bailey v.

Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Bell v. Waterfront Commission, 279 F.2d 853, 857–858 (2d Cir. 1960).

However, the case is not one of first impression. In an action posing closely similar issues, two judges of this Court have found sufficient basis for the convening of a three-judge court. Supreme Court Uniformed Officers Assn., et al. v. McCoy, et al., 64 Civ. 3329, Feb. 15, 1965 (Metzner, J.); id., May 12, 1965 (Cashin, J.). A decent respect for the weight of their authority and for the objective of minimal consistency within the Court requires that a similar course be followed here. Accordingly, the matter will be referred to the Chief Judge of the Circuit in accordance with 28 U.S. C. § 2284.

For the reasons stated, however, the motion for a preliminary injunction is denied.

It is so ordered.