The NATIONAL COLD STORAGE CO.,
Inc., Plaintiff,

v.

The PORT OF NEW YORK AUTHOR-
ITY, Defendant.

Civ. No. 150-266.

United States District Court
S. D. New York.

July 12, 1968.

Seligson & Morris, New York City, for plaintiff; Michael A. Berch, Muhlstock & Blei, Matthew Blei, New York City, of counsel.

Sidney Goldstein, New York City, for defendant.

EDELSTEIN, District Judge.

## OPINION

This is an action for a declaratory judgment under 28 U.S.C. § 2201. The plaintiff, National Cold Storage Co., Inc., by virtue of an assignment of three leases from its predecessor, has occupied certain premises near the East River in the Borough of Brooklyn, since 1951. These premises are used as a cold storage warehousing facility. Defendant, The Port of New York Authority, has been plaintiff's landlord since 1956 when it purchased the land from the New York Dock Company, the original lessor. The three leases were granted to plaintiff's predecessor by the New York Dock Company in 1914 and 1915. The dispute between plaintiff and defendant is one between tenant and landlord and is centered about the question of whether the Port Authority is discharging its responsibilities under the leases. Plaintiff claims that it is not being granted reasonable access to the bulkhead of the East River as covenanted for in the leases and that while the landlord is not to compete or allow anyone else to compete with the tenant under the leases, the Port Authority has constructed a cold storage facility in New Jersey. When this dispute arose, there was also some disagreement between the parties as to plaintiff's right to berth ships and defendant's alleged interference with plaintiff's water intake pipe. Happily, the berthing and water pipe controversies were settled by the parties prior to trial.

Defendant moved to dismiss the complaint on the ground that this court lacked jurisdiction over the subject matter of this dispute. The court reserved decision on that motion and a trial was held. At the trial the issues separating the parties were drawn sharply into focus both as to the jurisdictional question and the merits of plaintiff's allegations.

■ Plaintiff, in its amended complaint, alleges that this court has jurisdiction of this action by virtue of 28 U.S.C. §§ 1331, 1337 and 1343, and by virtue of its pendent jurisdiction. Section 1343 of 28 U.S.C. grants jurisdiction to the district court in civil rights cases. This section is patently inapposite to the factual situation at bar. Defendant is not alleged to have discriminated against plaintiff. All that the complaint alleges is that defendant, as a landlord, interfered with plaintiff's rights as a tenant. The complaint does not set out any allegations of interference with plaintiff's civil rights. Section 1337 of 28 U.S.C. grants jurisdiction to the district courts of actions arising under acts of Congress regulating commerce. The case at bar arises under the leases in question and plainly does not arise under any congressional act. Pendent jurisdiction relates to a federal court's power to hear and determine state law causes of action. The doctrine of pendent jurisdiction, however, is not an independent basis of jurisdiction over an entire action but only relates to causes of action which are premised upon state law. For pendent jurisdiction to arise, there must be at least one cause of action premised upon a federal question. See Hart & Wechsler, The Federal Court and the Federal System, 802–809 (1953).

■■ The only possible basis of jurisdiction remaining to plaintiff is his claim of jurisdiction under 28 U.S.C. § 1331. There is no question but that the matter in controversy exceeds the sum or value of $10,000.00. Plaintiff so alleged, defendant so stipulated, and, at the trial, it became fully apparent. The court finds that the monetary requirement of Section 1331 is met. The satisfaction of the monetary requirement does not of itself vest federal jurisdiction for the action must arise under the Constitution, laws, or treaties of the United States, the so-called federal question provision. It is not enough, however, that there be any federal question at issue but that there be a federal question which is not unsubstantial. See Port Authority Bondholders Protective Comm. v. Port of New York Auth., 387 F.2d 259 (2d Cir. 1967). Plaintiff al-

leges that this action arises under Section 1 of the Fourteenth Amendment, Article 1, Section 10, Clause 1 of the United States Constitution (the contracts clause), and 42 Stat. 174 and 42 Stat. 822 (congressional approval of the compact which established the Port Authority).

To say that this action arises under the congressional approval of the compact establishing the Port Authority is at best tenuous. The compact has absolutely nothing to do with the issue at bar. To hold that this court has jurisdiction over the case at bar because of the approval of the compact would be tantamount to holding that the federal court has jurisdiction in any action involving the Port Authority and such a holding would clearly be contrary to established concepts of jurisdiction. See Port Authority Bondholders Protective Comm. v. Port of New York Auth., supra.

 Plaintiff's allegation that this court has jurisdiction by virtue of the impairment of contracts clause of the Constitution is also without merit. Plaintiff alleges that the resolutions of the Board of Commissioners of the Port Authority are laws and that pursuant to such resolutions the Port Authority constructed and leased a cold storage facility in Port Newark in violation of the right to be free of competition contained in the leases. In the first place, the resolutions of the Commissioners constructing and leasing the facility in Port Newark are not laws within the framework of the contracts clause. Although railway commission orders, Louisville & N. R. Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229 (1931); Grand Trunk Western Ry. Co. v. Railroad Comm., 221 U.S. 400, 31 S.Ct. 537, 55 L.Ed. 786 (1911), and municipal corporation ordinances or by-laws, City of Vicksburg v. Vicksburg Water Works Co., 202 U.S. 453, 26 S.Ct. 660, 50 L.Ed. 1102 (1906), might be laws in this context, the resolution must be an exercise of legislative power for the resolution to be a law within the framework of the contracts clause. See Atlantic Coast Line Ry. Co. v. City of Goldsboro, 232 U.S. 548, 34 S. Ct. 364, 58 L.Ed. 721 (1914). The resolutions are not given the force of law in that they are not being enforced against anyone but they are merely the method by which a body corporate bestirs itself to action in the conduct of its affairs as a functioning entity. In the second place, assuming *arguendo* that the resolutions are laws, such regulations do not impair the obligations of contracts. Plaintiff's leases are not being impaired and, at best, plaintiff only might have an action for breach of contract since the Port Authority in no way attempted to negate the leases and is only alleged to be acting in violation of provisions in the leases.

Plaintiff's fourteenth amendment allegation is to the effect that defendant took plaintiff's property without just compensation. Defendant has argued that a fourteenth amendment taking must be total and, in any event, plaintiff's damages, if any, are merely consequential and not cognizable in a court of law. However that might be, the court is of the opinion that the plaintiff has not alleged a claim under the fourteenth amendment since the court declines to view the parties in a vacuum. Whatever the result might be if plaintiff and defendant were legal strangers to each other, in the case at bar, they are joined in the legal relationship of tenant and landlord. To hold that this court has jurisdiction would be, in effect, to hold that whenever a state (or in this case a bi-state) agency is alleged to have breached its lease with a tenant, or, for that matter, to have breached an innumerable range of possible contracts, the federal court has jurisdiction. Such a holding would be a massive interference with the principles of federalism by making the federal court the primary forum for deciding landlord-tenant disputes when a state agency is the landlord. In any event, the fourteenth amendment claim is plainly unsubstantial in the case at bar. It is merely an attempt to switch a breach of lease claim

from the state court where it belongs into the federal court where it assuredly does not belong.

Even if this court were to have jurisdiction in this matter, plaintiff could still not prevail. At the trial, plaintiff did not establish by the preponderance of the credible evidence that it is being denied reasonable access to the bulkhead. Indeed, it appears that plaintiff's seaborne commerce has improved since the actions complained of and that plaintiff has not been damaged in any way. It may be that plaintiff's having to make arrangements with the stevedore at the pier instead of the landlord whenever plaintiff wishes to receive seaborne commerce is some slight inconvenience, but it has not been demonstrated to the court that such a state of affairs is a denial of reasonable access to the water.

Plaintiff has also alleged that defendant breached the following restrictive covenant contained in all three leases:

> That the landlord shall not engage in or permit any other person, firm or corporation other than manufacturers where cold storage is a necessary adjunct to such business to engage in a refrigerating or cold storage business upon any part of its real estate during the period of this lease or any renewal thereof.

It is undisputed that a cold storage warehouse has been constructed by the Port Authority in Port Newark. It must be pointed out that at the trial plaintiff failed to demonstrate convincingly that it has been damaged by the new facility. This may well be due to the distance separating the two facilities. When the original leases were entered into the landlord was the New York Dock Company. Today the landlord is the Port of New York Authority, a far-flung empire, with interests both in New York and New Jersey. It may be that the covenant can be enforced against defendant if it attempts to build or to allow to be built a cold storage fa-

cility on the real estate once held by the New York Dock Company or on land close enough to the New York Dock Company's prior holdings so that it might have been anticipated that the New York Dock Company might one day acquire that land, but it cannot be said that the parties to the leases, over fifty years ago, intended to affect cold storage commerce throughout the whole Port of New York. If such was their intention, it should have been so demonstrated to the court. The court finds that the covenant was not intended to apply to Port Newark.

Since there is a lack of subject matter jurisdiction, defendant's motion to dismiss the complaint is granted.

So ordered.