The **CONTEMPORARY MUSIC GROUP, INC.**, Plaintiff,

v.

**CHICAGO PARK DISTRICT et al., Defendants.**

**No. 71 C 1336.**

United States District Court, N. D. Illinois, E. D.

Jan. 19, 1972.

Mark Lieberman and Stephen Durchslag, Chicago, Ill., for plaintiff.

Neil Hartigan and William Ward, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This is action brought by the plaintiff against the Chicago Park District and its Board of Commissioners for money damages for the cancellation of plaintiff's permit to present a rock concert in the Soldier Field Stadium.

Plaintiff, the concert sponsor, is an Illinois not-for-profit corporation, organized to provide music and cultural programs to the public. The Chicago Park District is a municipal corporation which controls and supervises the operation of Chicago's parks and recreation areas.

The course of events leading to the cancellation of the concert and the filing of this complaint is relatively simple. On or about March 24, 1970, plaintiff applied for a permit to present a rock music concert in the Soldier Field Stadium on September 13, 1970, and on April 14, 1970, the Park District issued such a permit agreement. Plaintiff then began expending certain sums of money in anticipation of that concert. Subsequently, on July 28, 1970, the Board of Commissioners of the Park District unanimously passed a resolution cancelling all permit agreements for rock music concerts for the remainder of the year 1970. Said resolution, which is incorporated in and made a part of the complaint, stated that the reason for this action was the occurrence of a premeditated riot at a rock music concert, featuring Sly and the Family Stone, held in Chicago at the Grant Park Band Shell on July 27, 1970, the day prior to the issuance of the resolution.[1]

According to the resolution, more than 1000 persons took part in the riot causing injury to over 50 private persons and 125 police officers with thousands of dollars in damage to personal property. The resolution also stated that numerous public statements and threats had been made by rioters and other persons at the scene at the time of and immediately following the disturbance, asserting that the rioting was part of a continuing plan to seek a violent confrontation with police officers and officials of the City of Chicago, and that said conduct would be repeated in the future. On the basis of these alleged facts, the Board of Commissioners of the Park District found "that a continuation or repetition of a contemporary music concert at or near the Grant Park Band Shell will present a clear and present danger to the health and safety of the citizens of the City of Chicago . . . ." The resolution further provided that "all Chicago Park District contemporary music concerts commonly known and referred to as 'Pop' or 'Rock' concerts, for the remainder of 1970 be and the same are hereby cancelled."

Based on those facts, plaintiff filed its complaint alleging that the cancellation of its permit violated its constitutional rights as guaranteed by Article 1, § 10, the First and Fourteenth Amendments, as well as its statutory (42 U.S. C. § 1983) and common law rights. Plaintiff claims that jurisdiction over the subject matter of its damage claim exists pursuant to 28 U.S.C. §§ 1331 and 1343. Defendants have challenged the sufficiency of the complaint to present any federal question and have moved to dismiss pursuant to Rules 12(b) (1) and 12(b) (6), F.R.Civ.P.

Having examined the complaint with all appropriate benevolence, it is this court's conclusion that the cancellation of this permit, under the circumstances alleged, created no federal claim. The analysis of plaintiff's four-pronged complaint follows.

## COUNT I

In essence, the complaint charges that the plaintiff had a contract with the Park District and that the Park District, by virtue of a unanimous resolution, breached the contract and thereby caused the plaintiff damages consisting mainly of lost profits.

Plaintiff attempts to transform this resolution into a violation of Article 1, § 10, Clause 1, of the Consti-

---

1. A rider attached to the permit agreement provided:
"Both the Park District and the Permittee [plaintiff] shall be excused from performance hereunder in the event of a strike, lock out, storm, governmental order, Act of God or any other event beyond the control of either party."

tution, which provides, *inter alia,* as follows:

> "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . ."

It has long been settled that this Clause does not apply to a suit for damages based upon the claim that a state, or one of its subdivisions or agencies, has breached or repudiated a contract with another person. Hays v. Port of Seattle, 251 U.S. 233, 40 S.Ct. 125, 64 L.Ed. 243 (1920); McCormick v. Oklahoma City, 236 U.S. 657, 35 S.Ct. 455, 59 L.Ed. 771 (1915); National Cold Storage Company v. Port of New York Authority, 286 F.Supp. 1016 (S.D.N.Y. 1968); and Brody v. McCoy, 257 F. Supp. 209 (S.D.N.Y.1966). The obligations of this contract were not impaired, because the plaintiff, as the aggrieved party, retained his remedy in a state action to compel full performance, either by a suit for damages or other relief. By the same token, plaintiff was not deprived of any property without due process by the simple act of cancellation. If the cancellation is determined to be wrongful, plaintiff can be made whole by the recovery of money damages for any loss it may have suffered.

■ Moreover, the resolution adopted by the Park Commissioners cannot be considered as a "law" under the Contracts Clause. The resolution, by its terms, was made applicable only to a particular situation for a limited period of time and did not possess the characteristics of a law of general application. National Cold Storage Company v. Port of New York Authority, *supra.*

The complaint made by the plaintiff that the cancellation was effected without giving plaintiff any notice or hearing can be presented as part of its proof of its breach of contract claim.

It clearly follows that what has been presented here is a possible cause of action for breach of contract, and that as such it belongs in the state and not the federal court.

### COUNT II

Since jurisdiction alleged under Count II is pendant to Count I, the dismissal of Count I will necessarily carry with it the dismissal of Count II. Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. den. 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970).

### COUNT III

The only new element presented by Count III of the complaint is the charge that the action of the defendants, the individual Commissioners, acting as a Board under color of state law, arbitrarily discriminated against rock music concerts as a group and against the plaintiff as an individual corporation which presents such concerts to the public.

The resolution of July 28, 1970, is characterized as "an unwarranted, unauthorized and arbitrary restriction since it prohibits all contemporary music concerts regardless of security precautions or other circumstances, and does not prohibit any other event attracting large numbers of the public in all age categories." The charge is also made that the Park District has continued to grant permits to some of its facilities for commercial events attracting large numbers of the public in all age categories, and particularly youthful members of the public, but continues to prohibit contemporary music concerts.

Plaintiff then reasserts its constitutional claims under the Fourteenth Amendment and adds an alleged violation of 42 U.S.C. § 1983. The prayer for relief reveals that the true thrust of plaintiff's action is still its claim for money damages in the amount of $1,500,000, which is the exact figure at which the plaintiff estimated the lost profits alleged to have resulted from its inability to present the concert.

Before considering the legal sufficiency of the plaintiff's claim under the Civil Rights Act, it may be observed that the plaintiff delayed filing any action to vindicate its rights until long after the concert date of September 13, 1970,

although it had a period of more than six weeks after the cancellation to seek interim relief.

Count III raises the question whether plaintiff has presented an ordinary action for breach of contract or a civil rights violation based upon an interference with some right, privilege or immunity guaranteed by the Constitution.

Although complaints alleging diverse violations of the Civil Rights Act and jurisdiction under 28 U.S.C. § 1343(3) have been flooding into the federal courts,[2] only a few judges have taken the time to examine the possible limitations of federal jurisdiction in the context of a particular fact situation. Judge Henry Friendly is a notable exception, and in Eisen v. Eastman, *supra*, he undertook a detailed analysis of a *pro se* complaint in which a landlord challenged the constitutionality of New York City's rent control act and asked for money damages for lost rent. In his usual scholarly fashion, Judge Friendly reviewed the scope of 28 U.S.C. § 1343(3) since Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), in which Mr. Justice Stone formulated the rule that the special jurisdictional statute applied "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." 307 U. S. at 531, 59 S.Ct. at 971. In affirming the dismissal of the portion of the complaint claiming a violation of the Civil Rights Act, because the complaint alleged only the loss of money, Judge Friendly said:

> "We therefore hold, although with a good deal less than complete assurance, that Justice Stone's *Hague* formulation, generously construed, should continue to be regarded as the law of this circuit." 421 F.2d at 566.

No case has been cited to indicate that the *Hague* formula is not the law as applied in this circuit. Although Judge Friendly admits that, like so many definitions, the Stone formula has been easier to state than to apply, this court has no hesitation under the facts presented by this case.

When all the gloss is removed from the complaint, and the overtones eliminated from some of the verbiage, the central legal question presented is whether the riot which took place in connection with the rock concert on July 27, 1970, and the alleged threats to continue the disruption of such concerts, under the circumstances outlined in the complaint and described in the resolution, constituted a legal justification for cancelling all concerts of this type, including the one for which the permit had been issued to the plaintiff.

The mere recital that the Park District "singled out" rock concerts does not in itself show "invidious discrimination" within the purview of the Fourteenth Amendment. Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); see also Seagram & Sons, Inc., v. Hostetter, 384 U.S. 35, 50, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966).

The Constitution of the United States need not be invoked to make the fact determination whether rock concerts in themselves are more likely to create disturbances of the peace as contrasted to an afternoon devoted to Strauss waltzes. A state court would be as competent as a federal court to hear evidence and to decide this interesting musical and sociological question. The Civil Rights Act was not designed to permit litigants a choice of forum for ordinary civil litigation where no diversity jurisdiction exists.

### Count IV

In a final grasp to obtain federal jurisdiction of its claim for damages,

2. "Civil rights actions have climbed from 296 in 1961, to 1,636 in 1968, to 5,138 in 1971. That means a 1,636 percent increase over eleven years, by far the greatest hike in all our 'nature of suit' statistics for that period." 1971 Annual Report of the Director, Administrative Office of the United States Courts, p. II–29.

**510**

plaintiff asserts in Count IV that its proposed concert was to consist principally of music dealing with social, political and national issues of importance, and that under these circumstances, the cancellation of the concert violated its First Amendment rights. Although the complaint does not indicate which First Amendment right was relied on, plaintiff's brief singles out the right of free speech.

Plaintiff cites East Meadow Community Concerts Association v. Board of Education, 18 N.Y.2d 129, 272 N.Y.S.2d 341, 219 N.E.2d 172 (1966), to justify its constitutional claim. In this case, Pete Seeger, a then controversial folk singer, had been scheduled to present a folk concert in one of defendant's school buildings. The sponsoring group's license to present the concert was withdrawn on the ground that Seeger had given a concert in Moscow, and some of his songs were critical of American policy in Viet Nam. The school board claimed that Seeger was a highly controversial figure whose presence might provoke a disturbance with consequent damage to school property. It was on this basis that plaintiff sought both an injunction and a declaratory judgment permitting it to hold the concert. The lower court dismissed the complaint, which dismissal was affirmed by the appellate division on the ground of mootness, the concert date having passed, and the plaintiff having expressly stated that it had no claim for money damages. The Court of Appeals of New York held that the cause was not moot and granted a declaratory judgment, holding that it was unconstitutional and improper for defendant to deny the use of its facilities to plaintiff solely because of the controversial views previously expressed by Seeger.

The Seeger case has no application here. There is nothing in plaintiff's application for a permit to indicate that plaintifff was seeking a platform for anything but a "rock music concert". The generalization can be made that every musical concert is to some extent a form of communication between the performer and the audience. The issuance of the permit indicates that the Park District had no existing policy to interfere with the particular form of expression represented by a rock concert. The *only* reason assigned in the complaint for the cancellation of plaintiff's concert was the rock concert riot of July 27, 1970, and the claim that future concerts of this type in the Grant Park area would present a clear and present danger to the community.

There can be no deprivation of the right of free speech by the cancellation of a rock concert based solely on the good faith exercise of the police power by a public body.

Plaintiff's claim that it is entitled to money damages because there was no compelling necessity to cancel its particular concert can be fully resolved in the state court, where this case should have been filed.

In light of the foregoing, defendants' motion to dismiss is granted as to all four counts of the complaint, and the cause is hereby ordered dismissed.