(Nos. 37436 to 37441 Cons.—

THE CITY OF CHICAGO, Appellee, *vs.* ROBERT G. VOKES *et al.*, Appellants.

*Opinion filed September 27, 1963.*

CHARLES A. BELLOWS, of Chicago, (BELLOWS, BELLOWS & MAGIDSON, of counsel,) for appellants.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, JOHN J. O'TOOLE, and ROBERT J. COLLINS, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

By separate complaints filed in the municipal court of Chicago, Robert G. Vokes, Ben D. Harmon, Allan M. Hoffman, Edward Piotter, Robert H. Moroz, and Ralph A. Olmos, all taxi drivers, were charged with transporting passengers for hire without a proper license in violation of section 28—3 of Chicago's municipal code, and upon hearing each was adjudged guilty and fined the sum of $60. A constitutional question being involved, the defendants have appealed directly to this court for review.

The facts in each case are virtually identical. The defendants were employed by either the Evanston Cab Company or the Skokie Red Top Cab Company, both being corporations maintaining a common radio dispatch office in Evanston. The taxicabs involved were licensed by either Evanston or Skokie, were regularly inspected for safety by

the city of Evanston, and were insured against public liability. In each case a telephone call was received in the Evanston dispatch office requesting a taxi at a Chicago address. The driver picked up the passenger as requested, transported him to another location in Chicago, received his fare, and was then arrested by a Chicago police officer.

Section 28—2 of the chapter of Chicago's municipal code relating to public passenger vehicles makes it unlawful for any person other than a metropolitan transit authority or public utility to operate a motor vehicle for the transportation of passengers for hire unless the vehicle is licensed by the city of Chicago as a public passenger vehicle. An exception, and limitations on the exception, are then stated in section 28—3 as follows: "Nothing in this chapter shall be construed to prohibit any public passenger vehicle from coming into the city to discharge passengers accepted for transportation outside the city. While said vehicle is in the city no roof light or other special light shall be used to indicate that the vehicle is vacant or subject to hire, and a white card bearing the words 'Not For Hire' printed in black letters not less than two inches in height shall be displayed at the windshield of the vehicle. No person shall be solicited or accepted in said vehicle for transportation from any place within the city. Any person in control or possession of said vehicle who violates any of the provisions of this section shall be subject to arrest and fine of not less than fifty dollars nor more than two hundred dollars for each offense."

Section 28—5 relates to license applications, and it is provided in section 28—5.1 that all corporate applicants shall be organized or qualified to do business under the laws of Illinois and have their principal places of business in the city of Chicago, and that all other applicants shall be citizens of the United States residing and domiciled in the city. Remaining sections indicate that licenses must be applied for annually, and section 28—6 directs that the commissioner of public vehicles, upon receipt of an application,

shall cause an investigation to be made of the character and reputation of the applicant as a law abiding citizen; and the financial ability of the applicant to render safe and comfortable transportation service, to maintain or replace the equipment for such service and to pay all judgments and awards which may be rendered for any cause arising out of the operation of a public passenger vehicle during the license period.

Defendants' prime contention is that the ordinance, insofar as it requires corporate applicants to have their principal place of business within the city of Chicago, contravenes the equal protection and due process clauses of the fourteenth amendment to the Federal constitution, and section 2 of article II of the Illinois constitution which likewise ordains that no person shall be deprived of life, liberty or property without due process of law. It is their theory that the residence requirement is unrelated to the public good, and that it arbitrarily and unreasonably discriminates against those corporations not having their principal place of business in Chicago. The city, while denying the constitutional infirmities asserted, first contends that defendants, being only individual employees of the corporations to whom the licensing provisions apply, have no standing to challenge the validity of the ordinance on such ground. In this, however, the city is mistaken. Defendants' convictions and the fines levied against them can be justified and sustained only if ordinance provisions in question are valid and binding against their corporate employers. Moreover, having been arrested, convicted and fined because the corporate employers had not obtained licenses for their cabs, defendants are plainly persons aggrieved by the operation of the ordinance and therefore competent to challenge its constitutional validity. Cf. *Huckaba* v. *Cox,* 14 Ill.2d 126; *Moran* v. *Zoning Board of Appeals,* 11 Ill.2d 374.

In determining the validity of the ordinance we may

start with the established propositions that a taxi is a common carrier for hire which derives its income from the use of public streets, and that the power of municipalities to police such a business is derived from its power to regulate or prohibit the use of its streets for private gain, (See: *Weksler* v. *Collins,* 317 Ill. 132; *People ex rel. Johns* v. *Thompson,* 341 Ill. 166; *Jackie Cab Co.* v. *Chicago Park District,* 366 Ill. 474.) and by specific statutory authority to regulate taxicabs. (Ill. Rev. Stat. 1961, chap. 24, par. 11—42—6.) The power to exclude includes, for the most part, the power to permit upon conditions and, as pointed out in *Weksler* v. *Collins,* 317 Ill. 132, 139, an occupation or business which may be carried on by permission will justify a degree of regulation not permissible in the case of an activity pursued as a matter of right.

The constitutional yardsticks to be applied to the present ordinance are also established beyond question. Neither the fourteenth amendment nor any provision of the Illinois constitution prevents the enactment of laws for the protection of the public health, safety, welfare or morals, and neither do they prohibit legislative classifications reasonably calculated to promote or serve such public interests. (*City of Decatur* v. *Chasteen,* 19 Ill.2d 204; *Zelney* v. *Murphy,* 387 Ill. 492; *Morey* v. *Doud,* 354 U.S. 457, 1 L. ed. 2d 1485.) Rather, they invalidate only enactments that are arbitrary, unreasonable and unrelated to the public purpose sought to be attained, or those which, although reasonably designed to promote the public interest, effect classifications which have no reasonable basis and are therefor arbitrary. (*Stewart* v. *Brady,* 300 Ill. 425; *Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303; *Charles* v. *City of Chicago,* 413 Ill. 428.) The reasonableness of a police regulation is not necessarily what is best but what is fairly appropriate under all circumstances, (*People ex rel. Johns* v. *Thompson,* 341 Ill. 166; *Sligh* v. *Kirkwood,* 237 U.S. 52, 59 L. ed. 835,) and

in like manner, a classification which has some reasonable basis is not unconstitutional because it is not made with mathematical nicety or because in practice it results in some inequality. (*Morey* v. *Doud,* 354 U.S. 457, 1 L. ed. 2d 1485.) Measuring by these tests, it is our opinion that the ordinance requirement for corporate licensees to have their principal place of business in the city is not so oppressive or unreasonable as to violate the guaranty of due process of law, or so invidious a discrimination against corporations outside the city as to violate the guaranty of equal protection.

By its very nature the taxicab industry directly and substantially provokes considerations of public safety and welfare. Its vehicles are constantly on the city streets, day and night, and the members of the public who utilize them must place almost a blind trust in the fitness of their equipment and the competence of their drivers. Thus, not only does the operation of the business call for measures to protect others using the streets and highways, but also for regulations which insure the highest degree of safety for its passengers. To attain these ends the ordinance here has conditioned the granting of an annual license on such factors as the competence and character of the owners and drivers, the use of equipment which will provide safe, convenient and comfortable transportation, and the financial ability of the owners to maintain their equipment and to respond in damages for tortious acts. There can be little doubt that these requirements, as well as the investigative and inspection provisions of the ordinance designed to see that they are met, are proper police measures reasonably related to the public purposes sought to be attained. In our opinion the requirement that corporate licensees have their principal place of business in the city is so intertwined with the foregoing provisions as to be itself a reasonable and nondiscriminatory exercise of the police power.

If corporations licensed to operate taxis in the city of Chicago have no place of business there and do not maintain their records or equipment there, the functions or investigation, inspection and supervision required in the public interest would be exceedingly difficult if not impossible to completely and adequately perform. This is particularly true when we consider the vast number of suburban towns and villages encircling the city, and the circumstance that Chicago investigators and inspectors, once outside the territorial limits of the city, would be without authority to act or to require compliance with the ordinances involved. When the question has arisen before, this court has held that the difficulty of inspection is a reasonable basis for classification, (*Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303; *Stearns* v. *City of Chicago,* 368 Ill. 112,) and we believe the same result obtains in this case. Nor does the circumstance that the cabs involved here were inspected and supervised in Evanston and Skokie, respectively, have the effect of making Chicago's requirement oppressive or discriminatory. Since the degree of regulation necessary in the public interest may differ from city to city, depending upon the size of the municipality and the local problems involved, control of the use of the streets and the other public purposes to be served are best achieved by permitting those cities, in which a corporate licensee seeks to do business, to themselves authorize and supervise the activities being carried on within their own boundaries, rather than to rely upon the inspection and supervision exercised by another municipality.

Further, it is also in the public interest to have the corporate officers and records available locally in the event of complaints, loss or litigation. (Cf. *Larson* v. *City of Rockford,* 371 Ill. 441.) Otherwise persons aggrieved or injured would be put to the difficult task of tracking down responsible parties and the beneficent provisions of the

ordinance in such respect could be unduly delayed if not lost. For these reasons we find no merit in defendants' constitutional objections.

By isolating certain language of section 28—3 of the ordinance, and by ignoring other language, defendants argue that the prohibition against unlicensed cabs soliciting within the city of Chicago applies only to the owners rather than the drivers, and also that the solicitation prohibition is made to apply only to taxis which come into Chicago to discharge a passenger accepted outside the city limits, as distinguished from taxis which come into the city empty and there accept a passenger in the first instance. Upon these bases defendants contend that they were not proved guilty of violating the ordinance. Neither point is well taken. As to the first, the prohibition is made to apply to "any person in control or possession of said vehicle," and clearly has application to its driver. As to the second, it is axiomatic that a statute or ordinance must be read as a whole to ascertain its meaning, (*Pascal* v. *Lyons*, 15 Ill.2d 41,) and when that is done here it is manifest that it was the legislative intent to prohibit all unlicensed cabs from soliciting business within the city limits, regardless of the manner or purpose for which they entered the city.

Based in part on the foregoing contention the defendants next assert, for the first time, that the complaints against them failed to state a cause of action. However, this contention fails in two respects. Not only did the pleadings contain such information as was reasonably necessary to inform defendants of the charges against them, but their failure to raise such an objection in the trial court forecloses them from raising it on review. *Gustafson* v. *Consumers Sales Agency, Inc.*, 414 Ill. 235; Ill. Rev. Stat. 1961, chap. 110, par. 42(3).

Finally, through the office of their reply brief, defendants attack the ordinance as being a restraint on interstate commerce in violation of section 1 of the Sherman Anti-

Trust Act, (15 U.S.C.A. § 1,) the Federal antitrust legislation. This question, however, has no source in the facts of these cases and is far afield from the issues presented and decided in the trial court, the only ones which are properly before us for review.

For the reasons stated, the judgments of the municipal court of Chicago are affirmed.

*Judgments affirmed.*