CONTEMPORARY MUSIC GROUP, INC., Plaintiff-Appellant, *v.* THE CHICAGO PARK DISTRICT, Defendant-Appellee.

First District (5th Division) No. 76-1646

Opinion filed January 20, 1978.

Taussig, Wexler & Shaw, Ltd., of Chicago (Richard L. Wexler and Judith L. Libby, of counsel), for appellant.

Joseph A. Power and William M. Ward, both of Chicago (Hartigan & Ward, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action was brought by plaintiff, Contemporary Music Group, Inc. (Contemporary), against defendant, Chicago Park District (District), for breach of contract. The complaint alleged that the District had breached its obligation under an executed permit agreement to allow Contemporary use of District facilities for purposes of staging a rock music concert. In its answer the District alleged as an affirmative defense that the permit in question had been properly revoked in the exercise of the District's police power, to secure the health, safety, good order and general welfare of the community. The trial court found for the District, holding that the revocation of Contemporary's permit constituted "a valid exercise of the police power and therefore was not a violation of the law." We affirm. The pertinent facts follow.

Contemporary is an Illinois not-for-profit corporation, organized to provide music and cultural programs to the public. The District is a municipal corporation which controls and supervises the operation of Chicago's parks and recreation areas. Ill. Rev. Stat. 1975, ch. 105, pars. 333.1 to 333.23v.

On March 24, 1970, Contemporary applied for a permit to present a rock music concert in the Soldier Field Stadium on September 13, 1970. On April 14, 1970, the District issued the requested permit. The permit agreement recited that as consideration for use of the premises Contemporary would pay the District a rental fee equal to 10 percent of the gross receipts. Contemporary then began planning and making certain expenditures in anticipation of the concert.

Subsequently, on July 28, 1970, the District's Board of Commissioners (Board) passed a resolution cancelling all permit agreements for rock music concerts for the remainder of the year 1970. Said resolution stated that the reason for this action was the occurrence of a premeditated riot at a rock music concert featuring Sly and the Family Stone, held in the Grant Park Band Shell on July 27, 1970.

According to the resolution, more than 1000 persons took part in the riot causing injury to over 50 private persons and 120 police officers with thousands of dollars in damage to the property of private citizens. Furthermore, numerous public statements and threats had been made by rioters and others at the scene, asserting that the rioting was part of a continuing plan to seek a violent confrontation with police officers and officials of the City of Chicago, and that said conduct would be repeated in the future.

On the basis of these alleged facts the Board concluded that

"* * * any future concerts similar in nature to the concert staged on July 27, 1970 present a clear and present danger to the health, safety and welfare of the general public, and a serious imminent threat to the lives of police officers of the City of Chicago, and present a grave and unjustifiable risk of the destruction of property of residents of the City of Chicago and of users of the facilities of the Chicago Park District."

Therefore, the Board ordered that all District "pop" or "rock" concerts for the remainder of 1970 be cancelled, and that all "permits heretofore granted or issued" by the District for such "contemporary music concerts are hereby withdrawn." The resolution concluded by stating no future concert permits would be issued until the Board felt conditions had improved.

At trial, Contemporary produced certain witnesses who testified that the proposed concert of September 13 was to be substantially different in nature than the concert at which the riot had occurred. More than one major musical group would be scheduled for Contemporary's concert, an admission fee of $10 would be charged, and security arrangements would be more extensive. The witnesses also testified that Contemporary was given no notice by the Board that this resolution was being considered, nor were they afforded a hearing on this matter. However, a representative of Contemporary, Douglas Kissel, was present at the Board's meeting wherein the resolution was passed. He requested clarification from the District as to whether the resolution applied to Contemporary and, after a week had elapsed, he was informed that the resolution did act to cancel the September 13 concert.

OPINION

The central issue in this case is whether the resolution passed by the District constituted a valid exercise of its police power. The police power is not without limitation and may not be exercised arbitrarily. (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 156 N.E.2d 587, *appeal dismissed* (1959), 361 U.S. 31, 4 L. Ed. 2d 98, 80 S. Ct. 121.) An act which deprives a citizen of his liberty or property rights cannot be

sustained under the police power unless a due regard for the public health, comfort, safety, or welfare requires it. (*United States Brewing Co. v. Village of Alsip* (1967), 81 Ill. App. 2d 235, 225 N.E.2d 430.) However, while exercise of the police power must not conflict with constitutional provisions, neither the United States Constitution nor the Illinois Constitution was designed to interfere with the enactment of reasonable regulations for the protection of the people. See 11 Ill. L. & Prac. *Constitutional Law* §149 (1955).

■■ In determining the legitimacy of the instant resolution the presumption lies in favor of its validity. So long as the resolution is within the District's grant of legislative power, the burden is on the party attacking to show its invalidity. (See *Keig Stevens Baking Co. v. City of Savanna* (1942), 380 Ill. 303, 44 N.E.2d 23; *cf. Memorial Gardens Association, Inc. v. Smith.*) There is no question that the subject matter of the instant resolution was within the grant of power conferred upon the District by the General Assembly. Ill. Rev. Stat. 1975, ch. 105, pars. 333.7 and 333.7—02; see also *Coughlin v. Chicago Park District* (1936), 364 Ill. 90, 4 N.E.2d 1; *Chicago Park District v. Altman* (1970), 127 Ill. App. 2d 467, 262 N.E.2d 373.

■■ Contemporary relies upon a number of constitutional grounds as proof of the invalidity of the District's actions in this case. Initially, Contemporary claims that the District's actions violated due process of law in that (1) the District unnecessarily delayed for a week before telling Contemporary that the ban applied to its proposed concert, and (2) the District gave Contemporary no notice or opportunity to be heard concerning the resolution. We reject these contentions. Neither the due process clause of the Federal Constitution nor the due process clause of the Illinois Constitution overrides the power of the State, or one of its subdivisions, to establish all regulations that are reasonably necessary to secure the health, comfort, safety, and general welfare of the community. See *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 288 N.E.2d 423; *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 224 N.E.2d 793.

Contrary to Contemporary's claim, the inquiry concerning due process in this case is not related to a lack of notice or hearing, or a delay in answering inquiries concerning the resolution. The cases cited as authority by Contemporary are clearly distinguishable from the instant case. Both *Carroll v. President & Commissioners of Princess Anne* (1968), 393 U.S. 175, 21 L. Ed. 2d 325, 89 S. Ct. 347, and *Slate v. McFetridge* (7th Cir. 1973), 484 F.2d 1169, involved the denial of first amendment freedoms by, respectively, an *ex parte* court proceeding and by an unexcused delay in the administrative act of denying an individual park permit. In the instant case, however, we are dealing with a legislative

enactment by the Board. The inquiry concerning due process in such cases is whether the enactment is aimed at an evil affecting the public welfare, and whether the means chosen to counter that evil were reasonable. If so, there is a proper exercise of the police power, despite interference with individual property and contract rights. *Chicago Real Estate Board v. City of Chicago.*

■■ We have determined that the resolution in the instant case meets this test. As stated in the resolution, the Board had evidence before it that the safety and welfare of the parks and private property and lives was threatened by a planned pattern of disruption of rock concerts. The withdrawal of permits for such concerts certainly seems a reasonable method of combatting such a problem. Even if one might legitimately opine that, based on the evidence concerning security presented by Contemporary, little danger existed that the instant concert could be easily disrupted, the legislative discretion should not be disturbed unless clearly erroneous. (See *Chicago Real Estate Board v. City of Chicago.*) Thus, even where the evidence accommodates a legitimate difference of opinion, the legislative judgment must prevail. (*Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 335 N.E.2d 61.) Under these rules, we must find that the instant enactment did not violate due process and was a legitimate exercise of the District's police power bearing a reasonable relationship to the evil to be remedied.

■■■ Having concluded such, we must also reject Contemporary's contention that the District's resolution violated the Constitutional provision against impairment of contracts. (U.S. Const. 1970, art. I, §10.) It is well settled that the contract clause of the Federal Constitution does not prohibit the enactment of all laws that may affect or interfere with the free exercise of rights granted by contracts. Such rights are always subject to the reasonable and legitimate exercise of the police power by the State and its subdivisions. (See *Meegan v. Village of Tinley Park; City of Chicago v. Chicago & North Western Ry. Co.* (1954), 4 Ill. 2d 307, 122 N.E.2d 553; *City of Chicago v. Illinois Commerce Com. ex rel. Chicago & Western Indiana R.R. Co.* (1934), 356 Ill. 501, 190 N.E. 896; *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.) Furthermore, immunity from the proper exercise of this power may not be granted by a contract of the State or a municipality. (*City of Chicago v. Illinois Commerce Com. ex rel. Chicago & Western Indiana R.R. Co.*) The police power may not be contracted away, nor may the exercise of contractual rights granted "be withdrawn from the implied liability to governmental regulations in particulars essential to the preservation of the community from injury." (*Northern Pacific Ry. Co. v. Minnesota ex rel. City of Duluth* (1908), 208 U.S. 583, 596, 52 L. Ed. 630, 636, 28 S. Ct. 341, 345.) We have concluded that the exercise of police

power in the instant case was both in the public interest and reasonably adapted to the ends proposed.

■■ We next turn to Contemporary's contention that the District's actions violated its constitutional right to equal protection of the laws. At trial, Douglas Kissel, the former president of Contemporary, testified that a concert took place at Margate Park following passage of the Board's resolution. He stated that he spoke with a District employee who told him the Margate Park concert was held under a permit granted by the District and he showed Mr. Kissel a copy of the permit. Contemporary contends that allowing the Margate Park concert while not allowing the Soldier Field concert constituted a denial of equal protection. Once again, we must disagree.

Clearly, the resolution does not violate equal protection on its face, since it does not violate the special legislation provision (Ill. Const. 1970, art. IV, §13) nor does it involve a fundamental right or suspect classification. (See *People v. Graves* (1974), 23 Ill. App. 3d 762, 320 N.E.2d 95.) Both the fourteenth amendment and the Illinois Constitution only invalidate

> "* * * enactments that are arbitrary, unreasonable and unrelated to the public purpose sought to be attained, or those which, although reasonably designed to promote the public interest, effect classifications which have no reasonable basis and are therefor arbitrary." (*City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 479, 193 N.E.2d 40, 44, *appeal dismissed* (1964), 377 U.S. 124, 12 L. Ed. 2d 174, 84 S. Ct. 1141.

The classification of contemporary music concerts in this case was reasonably based, and it was not discriminatory in that the resolution applied equally to all such concerts.

Admittedly, however, a law nondiscriminatory on its face may be grossly discriminatory in its operation or application. (*Williams v. Illinois* (1970), 399 U.S. 235, 26 L. Ed. 2d 586, 90 S. Ct. 2018; *United States v. Falk* (7th Cir. 1973), 479 F.2d 616.) Yet, the mere fact that a concert was held at Margate Park after the instant resolution was passed does not establish invidious or systematic discrimination against Contemporary. The equal protection clause is limited to acts of invidious discrimination and not to mere acts of inequality, or the erroneous and even arbitrary administration of State powers. See *Village of Cahokia v. Wright* (1973), 11 Ill. App. 3d 124, 296 N.E.2d 30, *aff'd* (1974), 57 Ill. 2d 166, 311 N.E.2d 153; *Lizak v. Zadrozny* (1972), 4 Ill. App. 3d 1023, 283 N.E.2d 252.

■■ The granting of a permit for the Margate Park concert, under the discretion retained by the Board in its resolution, established no right in Contemporary to be permitted to produce its concert on park property. Equal protection of the laws does not require identical treatment among

those similarly situated, but only that arbitrary or capricious distinctions not be made. (See *Milnot Co. v. Richardson* (S.D. Ill. 1972), 350 F. Supp. 221.) Contemporary must show that it was individually discriminated against in favor of another, with no rational basis for differentiation in treatment. (*Murphy v. Wheaton* (N.D. Ill. 1974), 381 F. Supp. 1252.) A mere error in judgment by the Board will not suffice, absent a design or intent to discriminate. (See *Kendrick v. Walder* (7th Cir. 1975), 527 F.2d 44.) Contemporary has made no such showing.

■■ Lastly, we have determined that Contemporary's contention that the Board's resolution constituted an unconstitutional prior restraint on Contemporary's right to freedom of speech is without merit. We find persuasive in this regard the reasoning of Judge Decker of the Federal District Court, who considered this issue in dismissing this same cause from Federal court:

> "There is nothing in plaintiff's application for a permit to indicate that plaintiff was seeking a platform for anything but a 'rock music concert'. The generalization can be made that every musical concert is to some extent a form of communication between the performer and the audience. The issuance of the permit indicates that the Park District had no existing policy to interfere with the particular form of expression represented by a rock concert. The *only* reason assigned in the complaint for the cancellation of plaintiff's concert was the rock concert riot of July 27, 1970, the claim that future concerts of this type in the Grant Park area would present a clear and present danger to the community.
>
> There can be no deprivation of the right of free speech by the cancellation of a rock concert based solely on the good faith exercise of the police power by a public body." *Contemporary Music Group, Inc. v. Chicago Park District* (N.D. Ill. 1972), 343 F. Supp. 505, 510.

In sum, therefore, we find that the resolution in the instant case constituted a valid exercise of the District's police powers. It was reasonably aimed at the public welfare and did not violate any constitutional provisions. Therefore, the resolution was not invalid and the District was thereby excused from performing its obligations under the previously granted permit agreement.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.