E & E HAULING, INC.,
Plaintiff-Appellant,

v.

FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, ILLINOIS and H. C. Johnson, Individually and as Director of the Forest Preserve District of Du Page County, Illinois, Defendants-Appellees.

No. 79-1545.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 27, 1979.

Decided Jan. 22, 1980.

Rehearing and Rehearing In Banc Denied Mar. 3, 1980.

Michael J. Rovell, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Richard A. Makarski, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal comes to us from the district court's dismissal of appellant's complaint for failure to state a federal claim. We have decided that the complaint stated a cause of action under the contract clause of the United States Constitution, art. 1, § 10, and thus reverse and remand the case for further proceedings.

I  Facts

Viewing the factual allegations of plaintiff's complaint as true, as we must in reviewing the grant of a motion to dismiss, *Duncan v. Nelson*, 466 F.2d 939, 941 (7th Cir.), *cert. denied*, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972); *Brown v. Dunne*, 409 F.2d 341, 342 (7th Cir. 1969), reveals the following:

In June of 1974 plaintiff-appellant E & E Hauling, Inc., entered into a contract enti-

tled "Agreement for Construction of Mallard Lake Recreational Preserve" with defendant-appellee, the Forest Preserve District of Du Page County, a body politic and corporate under Illinois law. Under the agreement plaintiff was given the exclusive right to operate and maintain a sanitary landfill at the Mallard Lake Recreational Preserve. Plaintiff agreed to construct two scenic and recreational hills, which, it was contemplated, would be used as ski hills, using the technique of sanitary landfill. The contract required plaintiff to obtain permits from the Illinois Environmental Protection Agency (IEPA) and the Du Page County Health Department, but did not itself specifically restrict the materials suitable for deposit in the landfill. Plaintiff secured the appropriate permits.

Since May of 1975 plaintiff and plaintiff's customers have been depositing liquids and sludge at the Mallard Lake landfill. In September of 1978 the District adopted Ordinance 9–51, which precluded the deposit of liquids at the Mallard Lake landfill effective October 18, 1978. On November 21, 1978 the District's President and Board of Commissioners amended Ordinance 9–51 by adopting Ordinance 9–90, which provided "that no liquid or sewage sludge may be dumped at The Mallard Lake Landfill Site after November 21, 1978, except septic tank dumpings approved by the County Health Department."

On December 30, 1978 the director of the District served notice on plaintiff that the District would not permit any incoming vehicles transporting liquid or sewage sludge to enter into the landfill. The District stationed uniformed, armed attendants at the landfill. The guards turned away trucks under the threat of arresting the drivers and impounding the trucks.

Plaintiff asserted in its complaint that the District's actions in promulgating and enforcing Ordinances 9–51 and 9–90 impaired its contractual obligation in violation of the contract clause of the United States Constitution. It also contended that the District's action in unilaterally terminating plaintiff's right to deposit liquids and sludge violated plaintiff's due process rights in that the action revoked plaintiff's contract rights and its permits from the IEPA without notice and a hearing.[1] Plaintiff requested declaratory and injunctive relief as well as damages.[2]

Judge McMillen granted defendants' motion to dismiss the complaint because plaintiff failed to plead a substantial federal question and thus the court lacked subject matter jurisdiction. The court reasoned that since the ordinance did not alter the parties' contractual obligation, but only made it impossible to comply with the contract and thus did not preclude a claim against the District for a breach of contract, the complaint did not state a claim under the contract clause. The court further stated that the due process clause had not been violated by the District's action because the District had not revoked any permits.

## II Contract Clause Claim

The contract clause of the United States Constitution provides "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S.Const., art. 1, § 10. The clause appears very far-reaching in scope but it has not been interpreted so broadly. The Supreme Court has stated that " 'literalism in the construction of the contract clause . . . would make it

---

1. The complaint also contained various state law claims. Plaintiff named H. C. Johnson, individually and as Director of Forest Preserve District of Du Page County, Illinois, a defendant in the action.

2. Plaintiff initially sought a motion for a temporary restraining order. After a hearing Judge McMillen entered a ten day temporary restraining order against interfering with the plaintiff's contractual rights. After extending the restraining order until February 14, 1979, Judge McMillen, after a hearing, denied plaintiff's motion for a preliminary injunction ruling that plaintiff had an adequate remedy at law and that plaintiff had not shown irreparable injury. At that point the plaintiff amended its complaint adding a request for money damages as well as naming H. C. Johnson, director of the District, as a defendant. On April 6, 1979 Judge McMillen dismissed the amended complaint.

destructive of the public interest by depriving the State of its prerogative of self-protection.'" *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240, 98 S.Ct. 2716, 2720, 2721, 57 L.Ed.2d 727 (1978) (quoting *W. B. Worthen Co. v. Thomas*, 292 U.S. 426, 433, 54 S.Ct. 816, 78 L.Ed. 1344 (1934)). It has been suggested that because of Supreme Court interpretation of the contract clause and because of the development of a large body of case law under the due process clause of the fourteenth amendment, it has seemed as if the contract clause had been dropped from the Constitution. *Allied Structural Steel*, 438 U.S. at 241, 98 S.Ct. 2716; Hale, *The Supreme Court and the Contract Clause*, 57 Harv.L.Rev. 852, 890–91 (1944). Recent Supreme Court cases have indicated that this is not the case. *See Allied Structural Steel*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727; *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

A federal cause of action is stated under the contract clause when one alleges that he or she has a contract with the state, which the state, through its legislative authority, has attempted to impair. *City Railway Co. v. Citizens' Street Railroad Co.*, 166 U.S. 557, 563, 17 S.Ct. 653, 41 L.Ed. 1114 (1897). Mere refusal to perform a contract by a state does not raise a constitutional issue, but when a state uses its legislative authority to impair a contract a constitutional claim is stated. Hale, *supra* at 891.

Initially we note that the Forest District is a state corporate and politic body with authority delegated to it by state statute "to pass and enforce all necessary ordinances, rules and regulations for the management of the [forest preserve district] property and conduct of the business of such district." Ill.Ann.Stat. ch. 57½, § 8 (Smith-Hurd 1972) (amended 1977). The board also was delegated authority by the state legislature "to appoint and maintain a sufficient police force, the members of which may have and exercise police powers over the territory within such forest preserves for the preservation of the public peace, and the observance and enforcement of the ordinances and laws . . . ." Ill. Ann.Stat. ch. 57½, § 9 (Smith-Hurd 1972). This means that an ordinance passed by the District, like Ordinances 9–51 and 9–90, which is enforced by the District's rangers, is an exercise of legislative power constituting a "law" within the meaning of the contract clause. *See St. Paul Gas Light Co. v. City of St. Paul*, 181 U.S. 142, 148, 21 S.Ct. 575, 577, 45 L.Ed. 788 (1901) ("It is no longer open to question that 'a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law . . . that it may properly be considered as a law, within the meaning of the [contract clause].'" (quoting *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 31, 8 S.Ct. 741, 31 L.Ed. 607 (1888)). *See also City Railway Co.*, 166 U.S. at 563, 17 S.Ct. 653.

It is also clear that the plaintiff has claimed the existence of a contract obligation which has been impaired by the District's ordinances. Both parties agree that a contract between E & E Hauling and the District existed.[3] Plaintiff claims that the contract permitted depositing liquid and sludge at the landfill site and that the District through enactment of an ordinance prevented the depositing of these substances.[4] Because plaintiff claims the ordi-

---

**3.** We note that the state legislature delegated authority to the District to enter contracts. Ill. Ann.Stat. ch. 57½, § 3a (Smith-Hurd 1972) (amended 1978).

**4.** The manner in which Judge McMillen resolved the case—finding that the complaint did not state a substantial federal claim—precluded his consideration of the contract terms and the scope of the ordinance. The parties do dispute whether the contract contemplated the dumping of sludge and liquids at the landfill site and whether the permits from the IEPA and the County Health Department allowed the deposit of sludge and liquid waste. Because of the lack of a record to decide these and other preliminary issues we do not consider them but direct the district court to address them on remand.

nance has prevented it from performing under the contract or enforcing its rights thereunder plaintiff has claimed impairment of its obligations under the contract. See *Allied Structural Steel*, 438 U.S. at 240, 98 S.Ct. 2716 (altering contract relationships by imposing additional obligations on one party impairs contract obligations); *United States Trust*, 431 U.S. at 20–21, 97 S.Ct. 1505 (statute which authorizes one party to assume greater risks and thus permits a diminution of pledged revenues impairs the other party's contract obligations).

The defendant District argues that its action impaired the performance of the contract, not its obligation, and thus plaintiff must proceed in state court under a theory of breach of contract. Their theory is that the District is subject to a suit for damages on the contract and therefore no constitutional claim has been raised. Once plaintiff has secured damages under the contract it no longer can claim its contract obligations have been impaired. The District relies on *St. Paul Gas Light Co. v. City of St. Paul*, 181 U.S. 142, 21 S.Ct. 575, 45 L.Ed. 788 (1901), and *Jackson Sawmill Co. v. United States*, 580 F.2d 302 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979), for this position.

The Supreme Court in the context of the contract clause has drawn a distinction between a breach of a contract and impairment of the obligation of the contract. The distinction depends on the availability of a remedy in damages in response to the state's (or its subdivision's) action. If the action of the state does not preclude a damage remedy the contract has been breached and the non-breaching party can be made whole. If this happens there has been no law impairing the obligation of the contract. *Hays v. Port of Seattle*, 251 U.S. 233, 237, 40 S.Ct. 125, 64 L.Ed. 243 (1920); Hale, *supra* at 891. The example of a private agreement is illustrative. When a private party breaks a contract it has breached the contract and has become liable for damages.

When it pays the damages the obligation of the contract is dissolved. A state or its subdivision also may breach a contract and when it pays damages the obligation of the contract has also been dissolved. Hale, *supra* at 638. However, if a state or its subdivision passes a law and through enforcement of it prevents another party from fulfilling its obligation under the contract because the use of the ordinance precludes a damage remedy, the non-breaching party cannot be made whole. Instead, the law has impaired the obligation of the contract. Use of law normally will preclude a recovery of damages because the law will be a defense to a suit seeking damages unless it is clear the law is not to have that effect.[5]

For example, in *Jackson Sawmill*, 580 F.2d 302, the City of East St. Louis, Illinois decided to build an expressway extension on the eastern approach to a bridge across the Mississippi River. To finance the extension the city executed a trust agreement with a St. Louis trust company providing for the issuance of bonds. Principal and interest on the bonds were to come wholly from the tolls and other bridge revenues. Later, the City, the State of Missouri, and the federal government decided to construct another bridge. The bondholders sued claiming the diminution of the tolls caused by the presence of the competing second bridge impaired its contract. The Eighth Circuit held that the action in constructing a competing bridge may have been a breach of the bondholders' contract but was not an impairment in the constitutional sense. The court stated "no attempt was made to use the law, federal or state, to repudiate a contractual obligation. Assuming the obligation did exist, all defendants were open to a suit for breach of contract." *Id.* at 312. The mere construction of a competing bridge did not preclude a remedy for damages and thus the contract had merely been breached; its obligation had not been impaired.

*United States Trust*, 431 U.S. at 21, 97 S.Ct. 1505; Hale, *supra* at 872–84.

---

5. As we discuss below this finding—that a contract was "impaired"—does not necessarily mean the impairment was unconstitutional.

In *St. Paul Gas Light*, 181 U.S. 142, 21 S.Ct. 575, the City of St. Paul entered a contract with St. Paul Gas Light Company to construct a gas plant and, upon request of the City, to install lamps to light the streets of St. Paul. The Company was to be paid interest on the cost of construction and installation. The contract was to run until 1907. In 1897, after the development of electrical street lighting, the City of St. Paul passed an ordinance requiring the Company to remove the gas lamps. The ordinance also directed that interest would no longer be paid for the unused gas lamps. The Company sued for damages. The Supreme Court held that a claim had not been stated under the contract clause and dismissed the suit for lack of jurisdiction. The Court reached this conclusion based on a specific finding that the City, despite the ordinance, was liable for damages for a breach of contract. The Court read the ordinance to "simply express the purpose of the city not in the future to pay the interest on the cost of construction of the lamp posts which were ordered to be removed." *Id.* at 149, 21 S.Ct. at 577–578. It was clear that the ordinance did not intend to preclude a damage suit. Use of the ordinance was merely the City's way of breaching the contract. *See also Hays v. Port of Seattle*, 251 U.S. at 237, 40 S.Ct. 125.

■ The present case is different from both *Jackson Sawmill* and *St. Paul Gas Light.* Here the plaintiff seeks a declaration that the ordinance was unconstitutional because it prevented it from depositing sludge and liquids at the landfill. The District enforced the ordinance by placing armed guards at the landfill site. That is, the District used its legislative authority to prevent the plaintiff from fulfilling its contract. Thus, *Jackson Sawmill* is distinguishable because here a law was used to impair the contract rights.[6] If the plaintiff sued for damages for a breach of the contract the District could claim that an ordinance prevents it from accepting sludge or liquids. In essence the ordinance would be a complete defense to a suit for damages. Only if that statute were declared unconstitutional could the plaintiff get a remedy for a breach of contract. *St. Paul Gas Light* is also distinguishable because there the ordinance was interpreted to be merely an indication that the City would not in the future pay interest. The ordinance did not prevent a damage remedy. Passage of the ordinance was the City's way of expressing that it was breaching the contract. Here the District relied on an ordinance in enforcing its ban on sludge and liquid waste and we see no indication that the ordinance is merely an indication that the District will no longer accept sludge and liquids while not precluding a damage remedy.[7] A resort

---

**6.** If the District had not passed an ordinance but only had stationed guards at the landfill the principle of *Jackson Sawmill* would control this case. Such action by the District would have been a breach of the contract and not an impairment of its obligation.

**7.** The history of the suit in *Contemporary Music Group, Inc. v. Chicago Park District*, 343 F.Supp. 505 (N.D.Ill.1972), is informative. In that case the Contemporary Music Group sued the Chicago Park District for cancellation of its permit to hold a rock concert in Soldier Field in Chicago. The plaintiff sought money damages claiming that the Park District's resolution cancelling all permit agreements for rock concerts in the year 1970 was unconstitutional. Plaintiff contended that this resolution was a law impairing its obligation of contract in violation of the contract clause.

The federal district court dismissed the action finding that the complaint did not contain a federal claim. The court held that plaintiff's

obligation had not been impaired because the plaintiff retained an action in state court for damages for breach of the contract or for other relief. *Id.* at 508.

At that point plaintiff pursued its remedy in state court. The state court held that the resolution constituted a valid exercise of the Park District's police powers and refused to give plaintiff any relief. *Contemporary Music Group, Inc. v. Chicago Park District*, 57 Ill. App.3d 182, 189, 14 Ill.Dec. 703, 372 N.E.2d 982 (1978). The court reached the merits of plaintiff's contract clause claim and held that the resolution did not violate the contract clause. *Id.* at 187–88, 14 Ill.Dec. 703, 372 N.E.2d 982.

Thus, the federal court ruled that no federal claim was stated because of the presence of a state court action for breach of contract, while in fact the use of the District's legislative power precluded such a suit. In such a situation a complaint has stated a federal claim.

to the use of the law in such a circumstance must be considered to raise a claim under the contract clause.[8]

Since we have found that plaintiff's complaint states a federal claim under the contract clause we must remand this claim to the district court for a hearing. While we do not mean to prejudge the merits of plaintiff's case we do feel some comments will help the district court in conducting the hearing on remand. At this hearing the court must first determine whether the contract contemplated the dumping of sludge and liquids at the landfill site, whether the ordinance prohibited such dumping, and whether plaintiff had complied with its permits.[9] If the court determines that plaintiff was in compliance with the contract in these regards and that because of the ordinance plaintiff was prohibited from dumping liquids and sludge at the site, it must then determine whether the asserted impairment violated the contract clause.

Not all impairments of contractual obligations are unconstitutional. Hale, *supra* at 872–84. Instead a court "must attempt to reconcile the strictures of the Contract Clause with the 'essential attributes of sovereign power' . . . necessarily reserved by the States to safeguard the welfare of their citizens." *United States Trust*, 431 U.S. at 21, 97 S.Ct. at 1517 (citing *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 435, 54 S.Ct. 231, 78 L.Ed. 413 (1934)). A state does reserve broad power to adopt regulations to protect the public without being concerned with upsetting contractual obligations. This power, however, is not unlimited. A substantial impairment will be found unconstitutional when it is shown that the legislation was not reasonable and necessary to meet an important social problem. *Allied Structural Steel*, 438 U.S. at 242–44, 98 S.Ct. 2716; *Agustin v. Quern*, 611 F.2d 206 (7th Cir. 1979); *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947, 959 (7th Cir.), *cert. granted*, 99 S.Ct. 2881 (1979). In addition, the severity of the impairment "measures the height of the hurdle the state legislation must clear." *Allied Structural Steel*, 438 U.S. at 245, 98 S.Ct. at 2723. Thus, on remand we direct the district court, in considering whether the contract clause has been violated, to balance the District's interest in its ordinance with the degree of impairment of the plaintiff's contractual expectations.[10]

## III   Section 1983 Claim

Plaintiff also contends its complaint stated a claim under 42 U.S.C. § 1983 in that it stated the District deprived it of a property right protected by the due process clause of the fourteenth amendment. Plaintiff asserts that it had a protected property interest embodied in its contract and its permit from the IEPA, and that the District's ordinance effectively deprived it of both rights. We disagree.

8. A claim under the contract clause need not originate in a state court. When a party seeks a declaratory judgment that a law is unconstitutional because it violates the contract clause this claim may be brought in federal court. *See allied Structural Steel*, 438 U.S. at 239–40, 98 S.Ct. 2716. The plaintiff need not first discover in a state court action that the law prevents a recovery in damages. *See Hays v. Port of Seattle*, 251 U.S. at 237, 40 S.Ct. 125, and *St. Paul Gas Light*, 181 U.S. at 149, 21 S.Ct. 575, in which the Supreme Court relied on its own interpretations of the state law or municipal ordinance finding the laws did not preclude such a recovery.

9. We note at this point that when jurisdiction of a federal court is invoked to determine whether a state law has unconstitutionally impaired a contract, and the question turns in part on the interpretation of the contract, the federal court "is bound to determine for itself whether there is a contract and to ascertain its meaning and effect." *Coolidge v. Long*, 282 U.S. 582, 597, 51 S.Ct. 306, 75 L.Ed. 562 (1931); *Irving Trust Co. v. Day*, 314 U.S. 556, 561, 62 S.Ct. 398, 86 L.Ed. 452 (1942). Thus, we see no reason to defer federal jurisdiction until these preliminary questions have been litigated in state courts.

10. An impairment is particularly severe where a party has relied heavily on the obligation which is impaired by the legislation, as when the legislation impairs express terms of the contract. *Allied Structural Steel*, 438 U.S. at 246–47, 98 S.Ct. 2716.

■ Plaintiff in essence is contending that in passing an ordinance and in enforcing that ordinance without giving plaintiff an opportunity to be heard is unconstitutional and raises a claim cognizable under section 1983. The rule is well settled, however, that no hearing is required where it is asserted a legislative rule of conduct, which applies to more than a few people, is used to affect the property of an individual. *Bi-Metallic Investment Co. v. State Board of Equalization of Colorado*, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915). In such a circumstance it would be impractical to give everyone potentially affected a voice in the proceedings. Instead, an individual's voice must be heard through the political process. Here, through its legislative authority the District passed an ordinance preventing everyone from dumping sludge or liquids at the landfill site. While plaintiff may have been particularly affected by this ordinance it is an ordinance of general application passed pursuant to proper authority and is concerned with policy matters not more specific evidentiary factors. *See Marathon Oil Co. v. Environmental Protection Agency*, 564 F.2d 1253, 1261–62 (9th Cir. 1977). Thus, the absence of a hearing did not deprive plaintiff of due process and the district court properly concluded that plaintiff had not stated a claim under section 1983.

### IV

Accordingly, we reverse the district court's decision that the complaint did not state a federal claim under the contract clause and remand to Judge McMillen for further proceedings not inconsistent with this opinion. Circuit rule 18 shall not apply.

Reversed and Remanded.