HORWITZ–MATTHEWS, INCORPORATED, Plaintiff–Appellant,

v.

CITY OF CHICAGO, Defendant–Appellee.

No. 95–2043.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1996.

Decided March 22, 1996.

Steven H. Cohen, Jeremy W. Hobbs (argued), Krasnow, Sanberg & Cohen, Chicago, IL, for plaintiff-appellant.

Lawrence Rosenthal, Benna R. Solomon, Susan Haerr Zucker, Anne Berleman (argued), Susan S. Sher, Michael A. Forti, Mary Beth S. Robinson, Office of Corp. Counsel, Appeals Div., Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

POSNER, Chief Judge.

Horwitz–Matthews, a developer, sued the City of Chicago for a declaration that the City had impaired the obligation of a contract between itself and the plaintiff in violation of the Constitution. The complaint contains a supplemental count, based on state law, for breach of contract. The district judge granted the City's motion to dismiss the constitutional count for failure to state a claim, Fed. R.Civ.P. 12(b)(6), and relinquished jurisdiction over the supplemental claim. See 28 U.S.C. § 1367(c)(3). But he made the dismissal of the constitutional claim without prejudice, so that the suit could be reinstated in the event that the disposition of the breach of contract claim by the state court showed that the City had impaired the obligation of its contract after all. The City has accepted this mode of dismissal; only the developer appeals.

All that we have to go on for factual background is the complaint and some exhibits to it. According to these documents, which we do not vouch for and the significance of which under state law we do not attempt to characterize, in 1987 the City, having condemned a parcel of real estate known as "R–5" for urban renewal, prepared a plan for a 342–unit apartment and commercial building to occupy the parcel and solicited bids to purchase the parcel and redevelop it in accordance with the plan. In October of that year Horwitz–Matthews submitted an offer to purchase the parcel for $4,465,000 and to redevelop it in accordance with the City's plan. The offer provided (we assume at the City's insistence) that "acceptance of the offer is established [meaning we suppose 'effective'] upon Department of Urban Renewal and City Council approval of the same." The offer contained a provision, also evidently required by the City, allowing the City to withdraw from the sale of the parcel prior to the conveyance of title if the City was "enjoined or prevented from [conveying title] by ... act of ... legislative or executive bodies having authority in the premises."

The approvals were forthcoming the next year. The City Council's approval of the sale took the form of an ordinance, enacted in December of 1988, authorizing the Mayor to execute a deed of conveyance of the parcel. The three-page offer was not a complete contract, and the City delayed the preparation of a final contract until a City office located on R–5 could be relocated. In 1991, the City's Department of Housing sent Horwitz–Matthews a proposed contract which the developer returned to the Department a few days later with some minor changes (oddly missing from the record). The City asked Horwitz–Matthews whether it would wait to complete the deal until the City cleaned up some contaminated soil that it had found in R–5. Horwitz–Matthews waited. The cleanup was completed by November and the developer asked the City to sign

the contract, as it was now more than four years since the developer had submitted its offer and almost three years since the City Council had approved it. A month later, however, before signing anything, the City disbanded its Department of Housing and created a new Department of Planning and Development, which decided that the plan for the development of R–5 should be modified to include more "affordable" (low-income?) housing. Horwitz–Matthews was agreeable and submitted a modified contract in June of 1993. A few months later, the Department suggested to the developer that it consider a joint development of the parcel with the Moody Bible Institute—and this was done too. Yet still the City would not sign a contract and in April 1994 it imposed new conditions, requiring Horwitz–Matthews to cure a default on a loan that had been made or guaranteed by the City to a partnership of which Horwitz–Matthews was the general partner and to put up certain guarantees of financial responsibility in light of the developer's "known financial problems." Horwitz–Matthews did not comply with all these demands and in October the City Council passed an ordinance repealing the ordinance of December 1988 that had approved the developer's original offer. The repealing ordinance recites in one of its "whereas" clauses that "no Contract for the Sale and Redevelopment of Land was entered into between the City of Chicago and Horwitz–Matthews, Inc. and no property was conveyed."

The Constitution forbids a state, including of course its subdivisions, *Atlantic Coast Line R.R. v. City of Goldsboro*, 232 U.S. 548, 555, 34 S.Ct. 364, 366–67, 58 L.Ed. 721 (1914); *E & E Hauling, Inc. v. Forest Preserve District*, 613 F.2d 675, 678 (7th Cir. 1980), to impair the obligation of contracts. U.S. Const. art. I, § 10, cl. 1. It is easy to see what this means when the state passes a law rendering a class of existing (as distinct from future, not-yet-entered-into) contracts legally unenforceable, thus wiping out contractual obligations. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504, 107 S.Ct. 1232, 1251–52, 94 L.Ed.2d 472 (1987); *In re Workers' Compensation Refund*, 46 F.3d 813, 817–21 (8th Cir.1995); *Association of Surrogates & Supreme Court*

*Reporters v. New York*, 940 F.2d 766, 772 (2d Cir.1991). We are speaking of the prima facie impairment, and not the issue of justification, on which most impairment of contracts cases in the modern era have foundered. See, e.g., *Keystone Bituminous Coal Ass'n v. DeBenedictis, supra*, 480 U.S. at 502–06, 107 S.Ct. at 1251–53; *Chicago Board of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 735–37 (7th Cir.1987); *id.* at 743–44 (separate majority opinion); *Association of Surrogates & Supreme Court Reporters v. New York, supra*, 940 F.2d at 771. We won't have to get into that here.

■ The application of the contracts clause to public contracts, though common enough, see, e.g., *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); *Baltimore Teachers Union v. Mayor & City Council of Baltimore*, 6 F.3d 1012, 1019 (4th Cir.1993); *Condell v. Bress*, 983 F.2d 415 (2d Cir.1993); *Association of Surrogates & Supreme Court Reporters v. New York, supra*, 940 F.2d at 773–74, is trickier. The prima facie case is harder to make out. For when a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract. It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution. Cf. *Mid–American Waste Systems, Inc. v. City of Gary*, 49 F.3d 286, 289 (7th Cir.1995); *Casey v. Depetrillo*, 697 F.2d 22, 23 (1st Cir.1983) (per curiam). The cases struggle to articulate the distinction. They differentiate between a mere breach of contract and a measure that defeats the promisee's "reasonable" or "legitimate" "expectations," or between a mere breach and a repudiation of the contractual obligation itself, or between a measure that leaves the promisee with a remedy in damages for breach of contract and one that extinguishes the remedy. See, e.g., *Hays v. Port of Seattle*, 251 U.S. 233, 237, 40 S.Ct. 125, 126, 64 L.Ed. 243 (1920); *E & E Hauling, Inc. v. Forest Preserve District, supra*, 613 F.2d at 679; *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 311–12 (8th Cir.1978). The first two attempted distinctions are spongy and meta-

physical, respectively, but the third is concrete and useful. The essence (well, here we are being a little metaphysical ourselves) of a breach of contract is that it triggers a duty to pay damages for the reasonably foreseeable consequences of the breach. If the duty is unimpaired, the obligation of the contract cannot be said to have been impaired. In Holmes's vivid formulation, the obligation created by a contract is an obligation to perform or pay damages for nonperformance, Oliver Wendell Holmes, "The Path of the Law," 10 Harv.L.Rev. 457, 462 (1897), and if the second alternative remains, then, since it is an alternative, the obligation created by the contract is not impaired. The analogy to the principle that government does not violate the takings clause if it stands ready to pay compensation for its takings should be evident. See, e.g., *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2879–80, 81 L.Ed.2d 815 (1984); *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir.1988).

We must ask, therefore, whether Chicago, rather than merely breaking the promise that it made to Horwitz–Matthews, set up a defense that prevented the promisee from obtaining damages, or some equivalent remedy, for the breach. The repealing ordinance, the target of the constitutional claim, purports to do no more than repeal the approving ordinance. It is the equivalent of a private contracting party's saying, "I promised to sell you my land, but I've thought better of the promise and have decided to withdraw it." If the first statement created a contract, the second is a breach and the promisee can sue for damages. We cannot see how the form (an ordinance), as distinct from the content, of the withdrawal can matter. If approvals and repudiations of city contracts are the responsibility of the city council, and the council acts through ordinances, then its contractual approvals and repudiations will be embodied in ordinances. Unless the form affects the promisee's remedy—unless the city council has been delegated authority by the state to modify the law of contracts, which is state rather than municipal law—there is no impairment of the obligation of the city's contracts.

We cannot find any significance in the fact that the repealing ordinance says there is "no Contract." Contract law usually permits a party to terminate a contract, subject only to a duty to pay damages; that is Holmes's redescription of the obligation created by contract. When a contract is terminated, even wrongfully, there is no longer a contract—"no contract"—no duty to perform and no right to demand performance, unless specific performance is sought, which it is not here; there is only a right to seek and a duty to pay damages caused by the termination.

We must consider, however, the bearing of the clause in the offer that entitles the City to withdraw if a legislative body prevents it from honoring the contract. This is a force majeure clause, excusing nonperformance under stated conditions. *Commonwealth Edison Co. v. Allied–General Nuclear Services*, 731 F.Supp. 850 (N.D.Ill.1990). If the State of Illinois passed a law forbidding the City of Chicago to sell land for redevelopment, the clause would kick in, the City would be off the hook, and Horwitz–Matthews, its contractual remedy extinguished by the effect of the state statute operating through the force majeure clause, would have a good claim against the State for having impaired the obligation of the developer's contract. That is not this case. The repealing ordinance did not prohibit the City from doing anything; any such prohibition could have been immediately repealed by another ordinance; all the ordinance did was announce the City's termination of the contract. See *E & E Hauling, Inc. v. Forest Preserve District, supra*, 613 F.2d at 680.

The district judge was afraid that a state judge might not see it this way, might treat the ordinance as a defense. See *id.* at 680 n. 7. That of course is the concern that underlies the plaintiff's constitutional claim. We do not share this concern, especially after the City both in its brief and its oral argument in this court stated forthrightly that it did not consider the repealing ordinance a defense to a suit for breach of contract. Under the doctrine of "mend the hold," in force in Illinois, a party to a contract cannot, at least after the pleadings are complete, repudiate a position taken in the course of litigation over the contract. *Israel v. National Canada Corp.*, 276 Ill.App.3d 454, 213 Ill.Dec. 163, 170–71, 658 N.E.2d 1184, 1191–92 (1995); *Delaney v. Marchon, Inc.*, 254

Ill.App.3d 933, 194 Ill.Dec. 128, 133, 627 N.E.2d 244, 249 (1993); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362–64 (7th Cir.1990). It is true that the pleadings are not complete here, because the City has not yet filed its answer to the complaint. But the purpose of the exception is to give the defendant a reasonable opportunity to formulate its defenses. When the case is on appeal and the defendant is emphatically asserting its position concerning its rights under the contract, we do not think the "mend the hold" doctrine will permit it to do an about-face later. The City will therefore be bound in Horwitz–Matthews' state court action for breach of contract by the concession it has made in this proceeding. And since the City has not requested that the judgment be changed from dismissal without prejudice to dismissal with prejudice, the judgment will stand as is, giving Horwitz–Matthews more protection than it is actually entitled to, by not precluding it from refiling this suit should its state court suit for breach of contract somehow go awry.

We have assumed so far that there is a contract but of course there may not be; that is the issue for resolution by the state court to which the breach of contract claim will now return by virtue of the district judge's sound decision to relinquish jurisdiction over that claim, a claim that came into the district court as merely a pendant to the federal constitutional claim that the court dismissed on the pleadings. We do not even know the facts; we have only the plaintiff's allegations. The City will be entitled in the contract action to assert—with one exception—whatever defenses it may have, of which the principal ones appear to be that the approval of Horwitz–Matthews' offer either did not create a contract or if it did was subject to the imposition of reasonable conditions and the financial conditions that the City attempted to impose were reasonable. The exception is a defense that even if there was a contract and it was broken the City cannot be liable because the repealing ordinance extinguished any remedy that the developer would otherwise have had. If the original approval did create a contract, the repealing ordinance, far from giving the City a defense, announced the breach for which the developer is entitled to damages under state law.

The developer relies heavily on our decision in *E & E Hauling, Inc. v. Forest Preserve District, supra*. The forest district made a contract that entitled the plaintiff to operate a landfill without any restriction concerning the materials that could be deposited in it. Several years after the plaintiff began its performance under the contract the district enacted an ordinance prohibiting the deposit of liquid and sewage sludge in the landfill. The court held that the ordinance had impaired the district's contractual obligation because the ordinance might be treated as a complete defense to any suit by the plaintiff for breach of contract. If the court's premise was correct—that the ordinance might prevent the plaintiff from obtaining any remedy under state law for breach of the contract to operate the landfill—then the conclusion followed. If not, not. Whether the court was right or wrong about the legal effect of the ordinance in *E & E Hauling,* we know that the ordinance is not a defense to a suit for breach of contract in this case. The City has explicitly conceded this and is bound by its concession.

AFFIRMED.