UNIVERSITY OF HAWAII PRO-
FESSIONAL ASSEMBLY, et
al., Plaintiffs,

v.

Benjamin J. CAYETANO,
et al., Defendant.

No. CIV. 98–00165 ACK.

United States District Court,
D. Hawaii.

June 16, 1998.

**1243**

Wade C. Zukeran, Gill & Zukeran, Honolulu, HI, for Plaintiffs.

Ruth I. Tsujimura, Department of the Attorney General, Empoyment Law Division, Honolulu, HI, for Defendant.

### ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

KAY, Chief Judge.

Before the Court is Plaintiffs' motion for a preliminary injunction enjoining the Governor and the Comptroller of the State of Hawaii from implementing Act 355, Session Laws of Hawaii 1997, as to University of Hawaii faculty members. Act 355 would delay the payment of salary to state employees by five days. Plaintiffs sole argument is that Act 355 violates the Contract Clause of the United States Constitution because a five-day delay in pay violates the collective bargaining agreement between the State of Hawaii and the faculty members at the University of Hawaii.

### BACKGROUND

Plaintiff University of Hawaii Professional Assembly ("UHPA") is the exclusive representative of bargaining unit 7, the faculty members at the University of Hawaii.[1]

UHPA negotiates with the Board of Regents, University of Hawaii, ("BOR") on the subject of wages, hours, and working conditions.

Historically, University of Hawaii ("UH") faculty members, like all state employees, received paychecks on the fifteenth day and the last day of each month pursuant to H.R.S. § 78–13, which provided that state employees (with some exceptions) shall be paid "at least semimonthly." On June 5, 1996, Act 80, Session Laws of Hawaii 1996 was enacted. That law amended H.R.S. § 78–13 to provide for a one-pay-period delay in payment of salaries by stating that

the governor, upon reasonable notice and upon determination that the payroll payment basis should be converted from predicted payroll to after-the-fact payroll, may allow a one-time once a month payroll payment to all public officers and employees to effect a conversion to after-the-fact payroll; provided that the conversion time schedule shall occur over a one-year period.

On January 17, 1997, the Hawaii Labor Relations Board ("HLRB") issued an order stating that a delay in payroll is material to the UHPA collective bargaining agreement and therefore the State must negotiate such a delay.[2] *See* Pl. Exh B, HLRB Order No. 1402.

On January 27, 1997, UHPA and BOR executed a collective bargaining agreement that covers the period between July 1, 1995 to June 30, 1999. The collective bargaining agreement includes terms regarding salary levels on a monthly and annual basis. *See* Pl. Mem., Exh. C, Ref. Pages 60–66. There is no mention of any payroll delay in the collective bargaining agreement.

On July 3, 1997, Governor Cayetano signed into law Act 355, Session Laws of Hawaii 1997 ("Act 355"). This act amended H.R.S. § 78–13 to provide:

Unless otherwise provided by law, all officers and employees shall be paid at least semimonthly except that substitute teachers, part-time hourly rated teachers of

---

1. The individual plaintiffs are officers, directors, and/or members of UHPA.

2. The Hawaii State Teachers Association ("HSTA") also participated in HLRB action and the HLRB's holding applied to the HSTA collective bargaining agreement as well.

adult and evening classes, and other part-time, intermittent, or casual employees may be paid once a month and that the governor, upon reasonable notice and upon determination that the payroll payment basis should be converted from predicted payroll to after-the-fact payroll, may allow a one-time once a month payroll payment to all public officers and employees to effect a conversion to after-the-fact payroll as follows:

(1) The implementation of the after-the-fact payroll will commence with the June 30, 1998, pay day, which will be delayed to July 1, 1998;

(2) The July 15, 1998, pay day will be delayed to July 17, 1998;

(3) The July 31, 1998, pay day will be delayed to August 3, 1998;

(4) The August 14, 1998, pay day will be delayed to August 19, 1998;

(5) The August 31, 1998, pay day will be delayed to September 4, 1998;

(6) The September 15, 1998, pay day will be delayed to September 18, 1998; and

(7) Thereafter, pay days will be on the fifth and the twentieth of every month. If the fifth and the twentieth fall on a state holiday, Saturday, or Sunday, the pay day will be the immediately preceding weekday. *The implementation of the after-the-fact payroll shall not be subject to negotiation under chapter 89.*

Thus, the legislature overturned the Hawaii Labor Relations Board decision that a payroll lag is negotiable.

On May 6, 1998, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendants from delaying payroll under Act 355 with respect to UH faculty members. On June 1, 1998, Defendants filed an opposition memorandum. On June 4, 1998, Plaintiffs filed a reply memorandum. The Court heard oral arguments on June 15, 1998.

### STANDARD OF REVIEW

In *Miller v. California Pacific Medical Ctr.,* 19 F.3d 449 (9th Cir.1994), the Ninth Circuit set forth the standard for granting a preliminary injunction as follows:

Traditionally we consider (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.

*Id.* at 456 (citing *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174 (9th Cir.1987)).

The moving party must show 'either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits.'

*Miller,* 19 F.3d at 456 (quoting *Senate of California v. Mosbacher,* 968 F.2d 974, 977 (9th Cir.1992)).

'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'

*Miller,* 19 F.3d at 456 (quoting *Odessa Union,* 833 F.2d at 174).

The grant or denial of a preliminary injunction is reviewed for abuse of discretion. *See Miss Universe, Inc. v. Flesher,* 605 F.2d 1130, 1132–33 (9th Cir.1979).

### DISCUSSION

### 1. LIKELIHOOD OF SUCCESS

The Contract Clause, U.S. Const., Art. I § 10, provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts...." The Supreme Court has observed that this "prohibition is not an absolute one and is not to be read with the literal exactness like a mathematical formula." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 21, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (citation omitted). To determine whether a law violates the Contract Clause, a court must first determine whether the law "substantially impairs ... contractual obligations" and, second, whether such substantial impairment (if any) is "nevertheless justi-

fied as a reasonable and necessary exercise of the State's sovereign power." *Continental Ill. Nat. Bank and Trust Co. v. State of Washington,* 696 F.2d 692, 697 (9th Cir.1983).

## A. Substantial Impairment

Defendants argue that Plaintiffs are not likely to succeed because there was no substantial impairment of the collective bargaining agreement. Specifically, they argue that, first, the pay lag does not impair the agreement because the timing of payroll was not a part of the agreement, and, second, even if the timing of each paycheck were a part of the agreement, a five-day lag does not impair the agreement substantially.[3]

■ It is likely that the timing of the payment of each paycheck is included in the collective bargaining agreement. The Ninth Circuit has ruled: "The obligation of a contract is the law which binds the parties to perform their agreement. Thus the laws which existed at the time the contract was entered into and which affect its validity, construction, discharge and enforcement, in effect, are incorporated within the contract." *Lafortune v. Naval Weapons Ctr. Federal Credit Union,* 652 F.2d 842, 846 (9th Cir. 1981) (citations and internal quotation marks omitted).

■ At the time when the collective bargaining agreement was executed, UH faculty were paid on the fifteenth day and the last day of each month. State law, pursuant to the HLRB decision, provided that the timing of the payment of salaries was a negotiable issue between the parties: the HLRB observed, "[P]ayroll dates concern wages which are conditions of work and are mandatory subjects of bargaining because they have a significant effect on the employees' working

conditions." Pl. Exh. B, at 13. The collective bargaining agreement, however, did not address timing of payroll. The collective bargaining agreement thereby included and did not alter the payroll timing that was in place when the agreement was executed. Thus Act 355 impairs the collective bargaining agreement.

Act 355's impairment of the collective bargaining agreement is likely to be substantial. The HLRB observed:

> The five-day pay adjustment will result in the delay in the payment of wages for affected public employees who will receive one less paycheck in the calendar year in which the lag is implemented. The Board finds that employees who are on a strict budget or who have timely bills to pay will find a delay in pay dates to be a hardship. The Board thus concludes that a delay in the receipt of wages resulting from the paylag ... has a significant and material impact on the employees' working conditions in creating a financial hardship for the employees.

Pl. Exh. B at 13.[4] Similarly, the Second Circuit observed regarding a proposed two-week payroll lag: "The affected employees have surely relied on full paychecks to pay for such essentials as food and housing. Many have undoubtedly committed themselves to personal long-term obligations such as mortgages, credit card, car payments, and the like—obligations which might go unpaid in the months that the lag payroll has its immediate impact." *Association of Surrogates and Supreme Court Reporters v. State of N.Y. ("Surrogates I"),* 940 F.2d 766, 772 (2d Cir.1991) (finding that a two week payroll lag would substantially impair state employment contracts).[5]

---

3. At the hearing, Defendants conceded that if the payment dates were explicitly set forth in the collective bargaining agreement, then the pay lag would constitute a substantial impairment.

4. Although federal law rather than state law controls whether contractual rights are violated under the Contract Clause, *see State of Nev. Employees Assoc., Inc. v. Keating,* 903 F.2d 1223, 1227 (9th Cir.1990), the Court finds the HLRB's reasoning persuasive.

5. Although Defendants characterize the pay lag as merely a five-day delay, the Court notes that this delay does not occur only once or even just a few times. On the contrary, the delay is indefinite. The effect of delaying each paycheck five days is the same as a one-time withholding of one week's pay that would be paid to the employee at the end of his or her tenure with the government: after the first week's pay is withheld, the state timely pays its employees every two weeks, as before. In *Association of Surrogates and the Supreme Court Reporters v. State ("Surrogates II"),* the court confronted a law that

Defendants argue that any injury caused by Act 355 could be adequately addressed by a damages remedy. In *Horwitz–Matthews v. City of Chicago*, the Seventh Circuit stated that a breach of contract does not violate the Contract Clause unless there is no adequate damages remedy. 78 F.3d 1248, 1250–51 (7th Cir.1996). That court explained, "[W]hen a state repudiates a contract to which it is a party[,] it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract.... [T]he obligation created by a contract is an obligation to perform or pay damages for non-performance." *Id.* Even if *Horwitz–Matthews* were the law in the Ninth Circuit,[6] the Court would find that a substantial impairment is likely because no adequate damages remedy is available to Plaintiffs. As Plaintiffs note, there are 3157 members of UHPA. Many of these members may experience harm from a pay lag including incurring late fees for bills and credit cards and delaying mortgage payments. In some cases, a delay of even five days could effect a person's credit report. It is highly unlikely that any damages remedy for a breach of contract would address the harm each UHPA member would incur due to a pay lag.

## B. Defendants' Justification

■ The state has the burden to show that a law impairing a public contract is both reasonable and necessary to fulfill an important public purpose. *See Seltzer v. Cochrane*, 104 F.3d 234, 236 (9th Cir.1996). "Because the State is a contracting party, we give less

deference to its claims of justification for impairment." *Continental*, 696 F.2d at 701.

In this case, Defendants argue that the payroll lag is reasonable and necessary in light of Hawaii's budgetary crisis. Specifically, Defendants cite the following facts. The legislature proposed to reduce general fund appropriations by $135.5 million in fiscal year 1996 and by $135.6 million in fiscal year 1997. Even with these budget cuts, there would be a balance of $15.5 million at the end of fiscal year 1996 and a shortfall of $143 million at the end of fiscal year 1997. Act 355 would give the general fund an estimated one-time savings of approximately $51 million ($7 million of which is attributable to a pay lag for UH faculty salaries, *see* Pl. Reply, Radcliffe Decl. ¶ 8) because the wages and salaries for the June 30, 1998 payroll will be paid from fiscal year 1999 appropriations. In addition, the lag under Act 355 would reduce payroll overpayments because it would provide the State with time to review employees' payroll.[7] Defendants state that to implement the payroll lag for all state employees except members of UHPA, the state would need to hire and train an additional two to four new employees to process separate payroll dates. *See* Def. Opp. Waterhouse Decl. ¶ 13.

The Court finds that Defendants have not shown that Act 355 is both reasonable and necessary to fulfill an important public purpose. "States are not free to consider substantial contractual impairments on a par with other policy alternatives." *Keating*, 903 F.2d at 1228 (citing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 30–31, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)). Defendants

---

required the withholding of one tenth of each paycheck for five paychecks; the withholding was to be paid out to the employee at the end of his or her employment with the state. 79 N.Y.2d 39, 43 n. 1, 580 N.Y.S.2d 153, 588 N.E.2d 51 (1992). In that case, the court characterized the pay schedule as a five-day pay lag, and found it to be a substantial impairment of a contract because the salary in effect "will not be paid until the employee leaves State service, which may be years in the future." *Id.* at 46–47, 580 N.Y.S.2d 153, 588 N.E.2d 51.

6. The Court questions whether the Ninth Circuit would follow *Horwitz–Matthews*. In *Keating*, 903 F.2d at 1228, the Ninth Circuit found a violation of the Contract Clause and invalidated a law

regarding the withdrawal of pension plan contributions; such a contract violation may have been compensable by a damages award.

7. Defendants state that the current payroll timing is "predicted," i.e., the amount of each paycheck is based on a prediction of the amount an employee will earn during the pay period. Defendants explain that the pay lag under Act 355 would change the payroll to an "after-the-fact payroll," and thereby result in greater accuracy in payroll. Plaintiffs respond that there is no concern for payroll overpayments with respect to the UH faculty because they are paid by salary and that over a 17–year period, overpayments have been less than $6 per member per year. Pl. Reply, Radcliffe Decl. ¶ 10.

state that they considered "several proposals to meet the anticipated shortfall, such as the federal maximization project (to obtain additional reimbursements from the federal government), additional budget restrictions, the repeal of tax credits, and a payroll lag." Def. Opp., Anzai Decl. ¶ 10. Defendants state that a payroll lag was chosen because it was the least drastic measure, requiring no reductions in programs, no further reductions in personnel, and no increase in taxes.

Even if the payroll lag is the path of least resistance, this explanation does not sufficiently establish that the payroll lag is reasonable and necessary. Although perhaps politically more difficult, numerous other alternatives exist which would more effectively and equitably raise revenues. In *Surrogates I,* the court found that a payroll lag was not justified because "[t]he state could have shifted the seven million dollars from another governmental program, or it could have raised taxes." 940 F.2d at 773. That court further noted, "We recognize that neither alternative would have been popular among politician-legislators, but that is precisely the reason the contract clause exists-as a 'constitutional check on state legislation' " *Id.* (citation omitted).

In addition, "[a]n impairment is not a reasonable one if the problem sought to be resolved by an impairment of a contract existed at the time the contractual obligation was incurred." *Massachusetts Community College Council v. Commonwealth of Mass.,* 420 Mass. 126, 133, 649 N.E.2d 708 (1995). The *Massachusetts* court relied upon *Trust Company,* in which the United States Supreme Court found an impairment of a public covenant unreasonable because the problem the legislature sought to address was known at the time the covenant was made. 431 U.S. at 31–32, 97 S.Ct. 1505. In this case, Defendants knew of the budgetary crisis at the time that the collective bargaining agreement was negotiated; in fact, the legislature had already attempted to impose a payroll lag, and the HLRB had ruled that Defendants must negotiate a payroll lag if one is desired by the State.

Defendants rely upon the only federal court of appeals case to find an impairment of a public contract justified, *Baltimore Teachers Union v. Mayor and City Council of Baltimore,* 6 F.3d 1012, 1019–20 (4th Cir. 1993). In that case, the court concluded that Baltimore's one percent pay reduction was justified in light of a number of circumstances that are not present in this case. In that case, the City of Baltimore was required by law to balance its budget, and "midway through the fiscal year ... [at] the eleventh hour" the state proposed cuts in aid to the city. 6 F.3d at 1020. Unlike the crisis the City of Baltimore faced, the budgetary crisis that the Hawaii legislature faces could not be blamed on another government's last minute actions.

## 2. POSSIBILITY OF IRREPARABLE HARM

The Ninth Circuit has observed, "An alleged constitutional infringement will often alone constitute irreparable harm." *Goldie's Bookstore v. Superior Ct.,* 739 F.2d 466, 472 (9th Cir.1984) (citing 11A Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948). In this case, the Court finds that irreparable harm is possible because, as discussed above, many of the 3157 members of UHPA may experience harm from a pay lag including incurring late fees for bills and credit cards and delays in mortgage payments. In some cases, a delay of even five days could effect a person's credit report. It is highly unlikely that any damages remedy would adequately compensate the injury of each and every member of UHPA.

## 3. BALANCE OF HARDSHIPS

For this factor, the Court must identify the harm which a preliminary injunction might cause the Defendants and weigh it against the Plaintiffs' threatened injury. *Los Angeles Memorial Coliseum Comm'n v. NFL,* 634 F.2d 1197, 1203 (9th Cir.1980). Although Defendants argue that Act 355 would provide a one-time savings of $51 million, they acknowledge that this is a "paper savings." Def. Opp. at 2. Defendants characterize this as a mere accounting adjustment which moves year-end payments into the next fiscal year. On the other hand, a delay in payroll

to individual UHPA members may have a very real effect on their ability to meet their financial obligations in a timely manner. Thus, the balance of hardships weighs against Defendants.

### 4. PUBLIC INTEREST

In this case, there are equally important public interests at stake on both sides. On the one hand, abatement of the state's budgetary crisis is critical. On the other hand, the constitutional integrity of state contracts and the financial security of state employees cannot be considered any less important. Thus, the Court finds that this factor does not favor either party.

### 5. SUMMARY

In light of the discussion above, the Court concludes that a preliminary injunction is proper. Plaintiffs have shown a likelihood of success on the merits because Act 355 substantially impairs the collective bargaining agreement. In addition, Defendants have not shown that such an impairment is reasonable and necessary. Absent a preliminary injunction, irreparable harm is possible, and the balance of hardships weighs against Defendants.

Furthermore, Plaintiffs seek to enjoin Defendants from implementing Act 355 only to the extent that it affects members of UHPA, and that is the extent of the Court's preliminary injunction. Defendants have stated that implementing Act 355 as to other state employees without affecting UHPA members will require the hiring of two to four additional clerks, which in turn would result in a $44 million "paper savings."

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for a preliminary injunction. In view of the fact that this preliminary injunction precludes Defendants from implementing a five-day pay lag with respect to UHPA members, the Court finds that there is no need for Plaintiffs to provide any security. The Court makes the attached additional findings of fact and conclusions of law as part of this ruling.

IT IS SO ORDERED.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law with respect to Plaintiffs' motion for a preliminary injunction.

### FINDINGS OF FACT

1. Plaintiff University of Hawaii Professional Assembly ("UHPA") is the collective bargaining agent for over 3100 faculty members. Individual plaintiffs are members of the faculty. The State of Hawaii has historically paid UH faculty on the fifteenth and last days of each month.

2. On June 5, 1996, Act 80, Session Laws of Hawaii 1996 was enacted. That law amended H.R.S. § 78–13 to provide for a one-pay-period delay in payment of salaries.

3. On January 17, 1997, the Hawaii Labor Relations Board ("HLRB") issued Order No. 1402, stating that a delay in payroll is material to the UHPA collective bargaining agreement and a negotiable matter, and thus the State may not unilaterally impose the pay lag provided by Act 80.

4. On January 27, 1997, UHPA and Board of Regents for the University of Hawaii executed a collective bargaining agreement that covers the period between July 1, 1995 to June 30, 1999. The collective bargaining agreement includes terms regarding salary levels on a monthly and annual basis. There is no mention of any payroll delay in the collective bargaining agreement.

5. On July 3, 1997, Governor Cayetano signed into law Act 355, Session Laws of Hawaii 1997 ("Act 355"), which provides for a five-day pay lag to be phased in beginning on June 30, 1998. Act 355 further provides that this pay lag is not a negotiable matter, thereby precluding the HLRB from invalidating Act 355.

## CONCLUSIONS OF LAW

1. The UHPA collective bargaining agreement includes the timing of payroll because it is material to the terms of employment and, at the time the collective bargaining agreement was negotiated, the timing of payroll was a negotiable matter.

2. Act 355 would likely substantially impair the collective bargaining agreement because a five-day pay lag would likely impose a substantial hardship on many employees who would not be able to meet their financial obligations such as mortgage payments in a timely manner. Such employees may incur late fees and other penalties due to the pay lag. In some cases, a delay in payment of certain bills by even five days may affect a person's credit rating.

3. A damages remedy is not likely to adequately address each employee's injury resulting from a pay lag because there are more than 3000 members of UHPA that are affected.

4. Defendants have not shown that the pay lag is both reasonable and necessary to fulfill an important public purpose. Defendants could have taken other measures to address Hawaii's budgetary crisis including raising taxes, repealing tax credits, or reducing funding for other programs. In addition, the budgetary crisis was known at the time the collective bargaining agreement was negotiated, and Defendants failed to negotiate a pay lag in the collective bargaining agreement.

5. In light of the foregoing, the Court concludes that there is a likelihood of success on the merits.

6. The Court further concludes that the financial hardship caused by a pay lag would likely result in irreparable harm because each UH faculty member's injury is not likely to be adequately addressed by any damages remedy.

7. The balance of hardships also weighs against Defendants. Although Defendants argue that Act 355 would provide a one-time savings of $51 million, they acknowledge that this is a "paper savings." Def. Opp. at 2. On the other hand, a delay in payroll to individual UHPA members may have a very real effect on their ability to meet their financial obligations in a timely manner.

8. There are substantial public interests in favor of Plaintiffs and Defendants, neither side outweighing the other.

9. In light of the Plaintiffs' likelihood of success, the likelihood of irreparable harm, and the balance of hardships, the Court concludes that a preliminary injunction is proper.

10. There is no risk of damage to Defendants in the event this injunction is wrongfully issued, since by this injunction, Defendants are simply required to pay UH faculty salary when due under their collective bargaining agreement rather than five days later under the proposed pay lag. Therefore, no security shall be required from Plaintiffs.

NOW, THEREFORE, based on the foregoing,

IT IS HEREBY ORDERED that, pending trial, Defendants are enjoined from implementing Act 355 with respect to UH faculty members.