In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1233

GARY JET CENTER, INC.,

*Plaintiff-Appellant,*

*v.*

AFCO AVPORTS MANAGEMENT LLC,
*et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:15-cv-00368-JVB-JEM — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED JANUARY 6, 2017 — DECIDED JULY 13, 2017

Before WOOD, *Chief Judge,* and BAUER and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant Gary Jet Center, Inc. is a Fixed Base Operator (FBO)[1] at the Gary/Chicago International Airport. Defendant-appellee Gary/Chicago International Airport Authority is a municipal corporation that owns and operates the Gary Airport. Defendants-appellees Mays, Dillard, Pritchett, Cooper, and Irving, are members of the Authority's board. Defendant-appellee AFCO AvPORTS Management LLC manages operations at the Gary Airport.

Gary Jet began operating at Gary Airport after entering into a lease with the Authority on December 9, 1991. The rules and regulations that control the operation of FBOs are commonly referred to as "Minimum Standards." In the Fall of 2006, Gary Jet and the Authority began negotiating a lease extension. At that time, the Minimum Standards contained a 1.5% charge on gross revenue. The rule stated that the Authority "intend[ed] to enforce" the 1.5% provision "for all commercial FBO services on the airport on or after" January 1, 2001, "pending the expiration of existing leases which do not incorporate these terms."

Gary Jet's original lease did not contain this provision, and the Authority had not attempted to collect such a payment from Gary Jet prior to the Fall of 2006. Gary Jet objected to the provision, and the parties settled on an alternative—Gary Jet would instead pay a "supplemental rent" consisting of 10% of the amount of all fuel flowage, parking, and landing fees that Gary Jet paid to the Authority each year.

---

[1]   A FBO is a commercial business allowed to operate on airport grounds in order to provide services such as fueling, hangaring, and aircraft maintenance.

Gary Jet and the Authority entered into a First Amended Lease Agreement on January 1, 2007 ("2007 Lease"). The lease stated that its term was 39 years, ending on December 31, 2045. The lease required Gary Jet to pay base rent plus the supplemental rent described above. The lease stated Gary Jet "shall abide by the provisions" of the Minimum Standards, except when those standards conflict with the 2007 Lease. In the event of a conflict, the terms of the 2007 Lease controlled. The lease further stated that the Minimum Standards "shall be a part of and be made applicable to" any subsequent FBO lease agreement.

On December 9, 2013, Gary Jet filed suit against the Authority claiming breach of contract and a constitutional violation under 42 U.S.C. § 1983. *See Gary Jet Ctr. v. Gary/Chi. Int'l Airport Auth., et al.*, No. 2:13-cv-453 (N.D. Ind. Dec. 9, 2013). The parties entered into a settlement and mutual release agreement ("2014 Settlement Agreement") effective August 7, 2014. As part of the agreement, Gary Jet agreed to work in good faith with the Authority to develop revised minimum standards ("New Minimum Standards") for FBOs at the airport. Additionally, the parties agreed that the New Minimum Standards controlled in the event of a conflict between Gary Jet's lease and the New Minimum Standards. Gary Jet also contends that the parties agreed to waive the provision of the Minimum Standards requiring Gary jet to pay the Authority 1.5% of its gross revenue.

On July 28, 2014, Gary Jet and the Authority agreed to amend the 2007 Lease with a revised lease ("2014 Amended Lease"). The 2014 Amended Lease included a provision in which the parties agreed that the Minimum Standards con-

trolled in the event of any conflicts with the terms of the 2014 Amended Lease. Gary Jet executed the 2014 Amended Lease and the 2014 Settlement Agreement contemporaneously.

Gary Jet and the Authority began exchanging drafts of the New Minimum Standards on December 5, 2014. The initial draft did not include a provision requiring Gary Jet to pay the Authority a percentage of gross revenue. On May 7, 2015, the Authority notified Gary Jet that it intended to include in the New Minimum Standards a requirement that each FBO pay the Authority a percentage of its gross revenues. Gary Jet objected, but the Authority approved the New Minimum Standards with the gross revenue provision on September 14, 2015.

Gary Jet contends that the New Minimum Standards altered its relationship with the Authority by: requiring 1.5% of Gary Jet's gross revenue; raising rent from $0.43 to $0.50 per square foot; compelling the disclosure of confidential business information concerning Gary Jet's revenues; and requiring Gary Jet to pay to maintain the fuel farm. Gary Jet argues that the New Minimum Standards violate the Contracts Clause of the United States Constitution by impairing the obligations of the 2007 Lease. It also argues that the New Minimum Standards exceed the Authority's power under Indiana law, and constitute a breach of the 2014 Settlement Agreement.

Gary Jet filed suit on September 24, 2015. The Authority moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 19, 2015. The district court granted the motion as to the Contracts-Clause claim without prejudice on December 18, 2015. It declined to dismiss the state law claims pending further briefing on the issue of supplemental jurisdic-

tion. At Gary Jet's request, it relinquished jurisdiction over the state law claims on January 19, 2016. This appeal followed.

## DISCUSSION

We review *de novo* a district court's decision granting a motion to dismiss under Rule 12(b)(6), accepting all well–pleaded factual allegations in the complaint as true and drawing all reasonable inferences in favor of the appellants. *St. John v. Cach, L.L.C.*, 822 F.3d 388, 389 (7th Cir. 2016). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The primary issue on appeal is whether Gary Jet has stated a Contracts-Clause claim, as it is the sole basis for federal jurisdiction. The Contracts Clause provides that "No state shall … pass any … Law impairing the Obligation of Contracts … . " U.S. CONST. art. I, § 10. "To succeed on a Contracts-Clause claim, a plaintiff must demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.'" *Council 31 of the Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 885 (7th Cir. 2012) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)). We have required plaintiffs to show "(1) that there is a contractual relationship, (2) that a change in law has impaired that relationship, and (3) that the impairment is substantial." *Id*. (citation omitted). We only need to address whether there has been an impairment of the contractual relationship in this case.

We have repeatedly found that the distinguishing characteristic between an unconstitutional impairment and a contrac-

tual breach is whether the non–breaching party has an available remedy. *Council 31*, 680 F.3d at 885; *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250–51 (7th Cir. 1996). In *Horwitz-Matthews*, the City and a developer entered into an agreement in which the developer agreed to purchase a condemned parcel of real estate from the City and redevelop the land in accordance with the City's urban renewal plan. 78 F.3d at 1249. The agreement was codified in a city ordinance. *Id*. After years of delay, the City Council passed a second ordinance that repealed the first ordinance and declared that there was no contract for the sale and redevelopment of land between the City and the developer. *Id*. at 1250. The developer sued the City, alleging that its new ordinance impaired the developer's contractual rights under the Contracts Clause. *Id*. at 1249.

The district court dismissed the developer's constitutional claim under Rule 12(b)(6). *Id*. We affirmed, reasoning that if a state fails to perform on its contract, but the legal obligation to pay damages for that breach remains, the contract has not been impaired. *Id*. at 1251. We further explained that a contract is impaired only when the legislation destroys *both* the obligation to perform on the contract *and* the obligation to pay damages for nonperformance. *Id*. Because the City's repealing ordinance merely announced the City's termination of the contract, and the City did not rely upon it as a defense to the developer's breach of contract claim, the developer could not state a claim for a Contracts-Clause violation. *Id*. at 1251–52.

Gary Jet argues that the issuance of the New Minimum Standards unconstitutionally impairs the 2007 Lease. The district court found that because Gary Jet did not raise a claim

for breach of the 2007 Lease, the Authority had no occasion to answer or raise any defenses to such a claim. The court concluded that the nature of the Authority's defenses was too speculative to state a claim under Rule 12(b)(6). We agree. At this juncture, the Authority has not relied on any legislative power to negate any hypothetical claim by Gary Jet for a breach of the 2007 Lease because no such claim has been raised. Therefore, Gary Jet cannot plausibly demonstrate that it is without a remedy for any violation of its contractual rights, which is the *sine qua non* of a Contracts-Clause claim.

Gary Jet contends that it did not raise a claim for breach of the 2007 Lease because it anticipated that the Authority would rely on its regulatory authority over Gary Jet to defeat such a claim. *See* Ind. Code § 8-22-3-11. However, the Authority's primary argument is that the parties agreed that the New Minimum Standards would govern the 2007 Lease as part of the 2014 Settlement Agreement. Therefore, this is a matter of contract interpretation, not a constitutional violation.

The Authority has refused to waive entirely a defense that relies on its regulatory authority because Gary Jet declined to include this claim in its complaint, and thus it has been unable to evaluate the merits of such a claim. This position strikes us as a prudent litigation tactic. Because the district court dismissed the case without prejudice, if Gary Jet decides to bring a claim for breach of the 2007 Lease in state court along with its other state law claims, and the Authority relies upon its legislative power, Gary Jet may have a viable Contracts-Clause claim that could be refiled in federal court.

Relying upon *E & E Hauling, Inc. v. Forest Preserve District of DuPage County, Illinois*, 613 F.2d 675 (7th Cir. 1980), Gary Jet argues that it should not have to litigate a breach of contract claim in state court before being permitted to bring a Contracts-Clause claim. In *E & E Hauling*, the defendant Forest Preserve District entered into a contract providing the plaintiff the exclusive right to operate and maintain a landfill at a recreational preserve. 613 F.2d at 677. The plaintiff and its customers deposited liquids and sludge into the landfill. *Id*. The District later adopted ordinances forbidding the deposit of liquids and sludge at the landfill. *Id*. The District went so far as to station guards at the landfill who turned away trucks and threatened to arrest the drivers and impound the trucks. *Id*.

The plaintiff argued that the ordinances unconstitutionally impaired its contract with the District in violation of the Contracts Clause. *Id*. The district court dismissed the suit, finding that the plaintiff was free to pursue a breach of contract suit in state court. *Id*. We reversed and remanded, finding that the ordinances had impaired the parties' contract by precluding recovery for damages. *Id*. at 680–81. In dicta, we noted that "[t]he plaintiff need not first discover in a state court action that the law prevents a recovery in damages." *Id*. at 681 n.8.

However, *E & E Hauling* is distinguishable from the instant case. In the former case, we noted that the District used armed guards to prevent the plaintiff from depositing sludge and liquids at the landfill, and thus "used its legislative authority to prevent the plaintiff from fulfilling its contract." *Id*. at 681. Here, no such obstruction of contractual rights has been alleged; Gary Jet is still operational at the Gary Airport and has not been forced to comply with the new provisions set forth in

the New Minimum Standards. Further, the Authority relies upon the 2014 Settlement Agreement in which the parties agreed that the New Minimum Standards would control Gary Jet's lease. No legislative power has been used to deny Gary Jet a remedy for a breach of the 2007 Lease. Therefore, this contract dispute has not risen to the level of a constitutional impairment. Accordingly, we find that Gary Jet has failed to state a Contracts-Clause claim. Because there is no basis for federal jurisdiction, Gary Jet's remaining state law claims must be pursued in state court.

## CONCLUSION

We AFFIRM the district court's dismissal of Gary Jet's suit.